[No. 64479-9. En Banc.]

Argued January 13, 1998. Decided July 9, 1998.

THORABELLE I. FOLSOM, *as Personal Representative, Petitioner,* v. BURGER KING, ET AL., *Respondents.*

DIANNA J. HARTVIGSEN, *as Personal Representative, Petitioner,* v. BURGER KING, ET AL., *Respondents.*

DURHAM, C.J., did not participate in the disposition of this case.

*Mark E. Vovos*; *Debra L. Stephens*; and *Moore & Royal*, by *John A. Moore, Jr.*, for petitioners.

*Reed McClure*, by *Pamela A. Okano*; *Feltman, Gebhardt, Eymann & Jones, P.S.*, by *Richard C. Feltman* and *Robert F. Greer*; *Huppin Ewing Anderson & Paul, P.S.*, by *Ernest D. Greco*; *Turner, Stoeve & Gagliardi, P.S.*, by *M. Jane Parry*; and *Chase, Hayes & Kalamon, P.S.*, by *Richard E. Hayes* and *Gerald Kobluk*, for respondents.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

JOHNSON, J. — On May 17, 1992, Blake Pirtle entered a Spokane, Washington Burger King through the back door entrance and murdered employees Dawnya Calbreath and Robert Tod Folsom during a robbery. Pirtle was convicted on two counts of aggravated first degree murder. *State v. Pirtle*, 127 Wn.2d 628, 904 P.2d 245 (1995). This case involves a lawsuit filed by the estates of the two Burger King employees killed by Blake Pirtle while at work (plaintiffs). Suit was brought against the employer (Hatter, Inc.), the franchisor (Burger King), and the security company (Spokane Security).

The suit against Hatter, Inc. was based on two theories: (1) the acts of Hatter, Inc. were "deliberately intended" to cause injury to the employees such that the employer's immunity under the Industrial Insurance Act is removed and

(2) Hatter, Inc. had a separate and distinct persona as land-owner. Against Burger King, plaintiffs based their theory of liability on Burger King's retained control over the operation of the franchised restaurant. Finally, the plaintiffs' suit against Spokane Security was based on negligence.

All defendants brought motions for summary judgment. Burger King and Spokane Security argued they owed the employees no duty of care. Hatter, Inc. claimed immunity under the Industrial Insurance Act (IIA), Title 51 RCW. The trial court granted summary judgment to defendants Burger King and Spokane Security. The trial court granted Hatter, Inc.'s motion for summary judgment on plaintiffs' "dual persona" theory of liability, but found sufficient facts to deny summary judgment on the "deliberate injury" exception to employer immunity. Both Hatter, Inc. and plaintiffs moved for discretionary review, which was granted. We reverse the trial court on the plaintiffs' deliberate intention claim against Hatter, Inc., and affirm the trial court on all other claims.

Due to the separate nature of each claim, we will provide additional facts as we discuss each issue.

## ANALYSIS

Before reaching the merits of the parties substantive arguments, we must resolve plaintiffs' procedural issue. The trial court struck portions of an expert witness's affidavit relating to the duty of care or the standard of care in the fast-food industry. Specifically, the trial court struck expert opinion that Spokane Security had a duty to remove its equipment after termination of its monitoring contract, and that the failure to do so fell below the standard of care in the security services industry. The trial court also struck expert opinion establishing the reasonable care required of a franchisor with respect to security at a franchised restaurant. The trial court excluded this evidence, concluding parts were legal conclusions, mixed statements of law and fact, invasion of the province of the jury, or opinions

lacking proper foundation. The plaintiffs assign error to the trial court's decision and ask us to review the entire record, including those redacted portions, under the de novo standard of review.

 Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). The burden is on the party moving for summary judgment to demonstrate there is no genuine dispute as to any material fact and reasonable inferences from the evidence must be resolved against the moving party. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (citing *Morris v. McNicol*, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974)). The motion should be granted only if, from all the evidence, a reasonable person could reach only one conclusion. *Lamon*, 91 Wn.2d at 350 (citing *Morris*, 83 Wn.2d at 494-95). An appellate court engages in the same inquiry as the trial court when reviewing an order for summary judgment. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

 An appellate court would not be properly accomplishing its charge if the appellate court did not examine *all* the evidence presented to the trial court, including evidence that had been redacted. The de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion. This standard of review is consistent with the requirement that evidence and inferences are viewed in favor of the nonmoving party, *Lamon*, 91 Wn.2d at 349 (citing *Morris*, 83 Wn.2d at 494-95), and the standard of review is consistent with the requirement that the appellate court conduct the same inquiry as the trial court. *Mountain Park Homeowners Ass'n*, 125 Wn.2d at 341.

We examined the expert's affidavits regarding the ability of police to respond to a telephone call to the sheriff's office

and regarding the duties of the defendants to meet certain security standards. However, we agree with the trial court and affirm the decision to exclude portions of the expert testimony.

## Employer Immunity

The trial court found there were genuine issues of material fact regarding the plaintiffs' "deliberate intention" theory under RCW 51.24.020 and, accordingly, denied summary judgment to the employer, Hatter, Inc.

Hatter, Inc. is an Idaho corporation whose only business is to manage and operate Burger King restaurants in the Spokane and northern Idaho area. Edwin Hatter is the sole shareholder of the voting common stock of Hatter, Inc., and both Edwin and Michaele Hatter are employees of Hatter, Inc. Hatter, Inc. employed employees Calbreath and Folsom and, until he was fired, Blake Pirtle. Plaintiffs have presented facts indicating Hatter, Inc. was aware of Blake Pirtle's criminal history and of the security risks the restaurant presented.

 Generally, the IIA allows injured workers to receive speedy, no-fault compensation for injuries sustained on the job, and employers are given immunity from civil suits by employees. RCW 51.04.010. An exception to the immunity granted to employers exists where an employer deliberately injures an employee. RCW 51.24.020 reads:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

Washington courts have required a specific intent to injure in order to sustain a claim under RCW 51.24.020. *Nielson v. Wolfkill Corp.*, 47 Wn. App. 352, 355, 734 P.2d 961 (1987). Mere negligence does not rise to the level of deliberate

intention. *Delthony v. Standard Furniture Co.*, 119 Wash. 298, 299-300, 205 P. 379 (1922). Gross negligence and a failure to follow safety procedures does not constitute a specific intent to injure. *Peterick v. State*, 22 Wn. App. 163, 189, 589 P.2d 250 (1977); *Biggs v. Donovan-Corkery Logging Co.*, 185 Wash. 284, 54 P.2d 235 (1936). Even an act that has substantial certainty of producing injury does not rise to the level of specific intent to cause injury. *Higley v. Weyerhaeuser Co.*, 13 Wn. App. 269, 271-72, 534 P.2d 596 (1975).

Hatter, Inc. recognizes that under RCW 51.24.020 an employee may sue the employer "for all injuries resulting from the 'deliberate intention of [his or her] employer to produce such injury,'" *Foster v. Allsop Automatic, Inc.*, 86 Wn.2d 579, 582, 547 P.2d 856 (1976) (quoting RCW 51.24.020), but argues the plaintiffs' claim does not fit under this statutory exception. Hatter, Inc. argues further that the employer's immunity remains despite the existence of negligence or even gross negligence. *Foster*, 86 Wn.2d at 581 (citing *Jenkins v. Carman Mfg. Co.*, 79 Or. 448, 155 P. 703 (1916)). Plaintiffs claim the "deliberate intention" exception of RCW 51.24.020 requires only knowledge that some injury was certain to occur. Plaintiffs allege that exact knowledge of the particular injury that occurred in this case is not necessary. Plaintiffs assert Hatter, Inc. was aware that injury was sure to result from the combination of Blake Pirtle and business practices that "invited him to rob the North Argonne Road Burger King." Reply and Resp. Br. of Pet'rs at 35. However, the facts alleged by plaintiffs do not support this theory.

The trial court judge acknowledged this court's holding in *Birklid v. Boeing Co.*, 127 Wn.2d 853, 904 P.2d 278 (1995), which analyzed this exception to employer immunity, and reasoned that "deliberate intention" means the employer must have actual knowledge an injury was certain to occur and willfully disregards that knowledge. The trial court found sufficient facts to support this theory. Plaintiffs produced the following evidence: Hatter, Inc.

hired Pirtle with knowledge of his criminal record, which included violent felonies; employees knew Hatter, Inc. left large amounts of cash in the restaurant which may have created an incentive for robbery; it is highly predictable that a fast-food restaurant will be robbed; and Hatter, Inc. discontinued the security monitoring service and did not tell the employees. The trial judge concluded, based on this evidence, a jury could find Hatter, Inc. had actual knowledge that injury was certain to occur and willfully disregarded that knowledge. We disagree and find this evidence fails to support the standard required by statute.

In addressing this statutory exception, Washington courts have interpreted the exception narrowly and have found "deliberate intention" typically when there is a physical assault by one worker against another. *Birklid*, 127 Wn.2d at 861-62; *see Perry v. Beverage*, 121 Wash. 652, 209 P. 1102 (1922), 214 P. 146 (1923) (court held jury had right to find "deliberate intention" when supervisor struck employee with ceramic pitcher); *Mason v. Kenyon Zero Storage*, 71 Wn. App. 5, 9, 856 P.2d 410 (1993) (factual question remained concerning whether a supervisor was acting within the scope of employment; however, deliberate intent was not disputed when employee driving forklift purposely crushed another between two drums).

We analyzed RCW 51.24.020 in *Birklid* and concluded the language was broader than prior cases had established. We supported our analysis by observing that our prior case law had almost read the exception out of existence and an extremely narrow interpretation of the statute was not supported by the language of the statute. *Birklid*, 127 Wn.2d at 862-63. In *Birklid*, it was alleged that Boeing knew in advance workers would become ill when exposed to phenol-formaldehyde fumes, and that Boeing exposed the workers to the product despite this knowledge. *Birklid*, 127 Wn.2d at 863. We determined the injuries sustained by the employees were arguably not caused by accident. *Birklid*, 127 Wn.2d at 863. We held that "deliberate intention" is not limited to physical assaults, but includes

incidents where it can be proven the employer *has actual knowledge that injury is certain to occur and willfully disregards that knowledge. Birklid,* 127 Wn.2d at 865. We concluded a jury could find the injuries sustained by the employees fit the statutory "deliberate intention" exception because Boeing may have known, in advance, that exposure to the chemical would cause injury. *Birklid,* 127 Wn.2d at 865-66.

Applying *Birklid*'s analysis of the "deliberate intention" requirement, we find the trial court erred in denying defendant Hatter, Inc.'s motion for summary judgment. In this case, the evidence viewed in the light most favorable to plaintiffs suggests that Hatter, Inc. may have known of Blake Pirtle's criminal history, of his sexual harassment of female co-workers, that the back door entrance did not have a security peephole and did not lock properly, that keeping cash in the restaurant may invite theft, and that there was no active security system. However negligent these acts might be, the statutory exception to employer immunity as discussed in *Birklid* requires more. No factual allegations are made and plaintiffs cannot establish that Hatter, Inc. had actual knowledge injury was certain to occur or that Hatter, Inc. intended the murders of its employees to result from the brutal act of another. Under RCW 51.24.020, an employer must have knowledge an injury is certain to occur and willfully disregards that knowledge. The plaintiffs' proffered evidence does not meet this test. Essentially, plaintiffs cannot show that by operating the business in the way Hatter, Inc. did, Hatter, Inc. knew its employees would be killed. Without such a showing, employer immunity applies. Accordingly, we reverse the trial court on this issue and grant Hatter, Inc.'s motion for summary judgment.

## Dual Persona

Plaintiffs allege Hatter, Inc. owed a duty to the employees in its persona as a lessee and occupier of land, and allege this duty is distinct from that owed as an employer.

Under the "dual persona" theory, liability attaches if Hatter, Inc.'s "landowner status" can be found to be an entirely separate entity which creates separate liabilities from that of employer.

Hatter, Inc.'s business involves the operation of Burger King restaurants. Edwin Hatter, an employee of Hatter, Inc., is involved in the general management, the supervision of daily operations, the marketing, and the financial decisions of the restaurants. Plaintiffs allege Hatter, Inc. and Edwin Hatter have additional legal status as the landholders of several restaurant premises. Plaintiffs allege this landowner status gives rise to the obligation of maintaining the premises which was not, according to plaintiffs, passed on to Hatter, Inc. through an assignment of rights.

■ The "dual persona" theory is explained:

> An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.

2A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 72.81 (1984). Plaintiffs must establish that the second function generates obligations distinct from those related to the employment activity. *Corr v. Willamette Indus., Inc.*, 105 Wn.2d 217, 220-21, 713 P.2d 92 (1986).

■ The "dual persona" theory may apply when the employer occupies the property upon which the injury took place. *See Evans v. Thompson*, 124 Wn.2d 435, 879 P.2d 938 (1994). However, "[i]t is held with virtual unanimity that an employer cannot be sued as the owner or occupier of land." 2A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 72.82 (1983). This rule applies where the employer and the landowner are the same entity. *Evans*, 124 Wn.2d at 443. The plaintiff is not permitted to split a single legal entity into separate parts. *Evans*, 124 Wn.2d at 443. These rules reflect the principle that an injured worker cannot

avoid the exclusivity of the IIA by focusing on the immune employer's other functions.

In *Evans v. Thompson*, 124 Wn.2d 435, we remanded for a determination of whether the employer and landowner were, in fact, separate entities. The Thompsons, as *individuals*, owned the land where the injury occurred for personal investment purposes, owed a balance on the property, listed the property as their residence, obtained construction and grading permits for the land, and allowed the corporation to use the property. *Evans*, 124 Wn.2d at 438-39. Questions existed about the separate nature of the owner of the premises and the business conducted on the property. Plaintiffs in the case before us have alleged no facts that would create a second persona as lessee or land occupier so independent from and unrelated to either Hatter, Inc.'s status as employer, or Edwin Hatter's status as coemployee and shareholder, so as to impose liability.

The plaintiffs show that in 1991, Burger King granted Edwin Hatter the franchise. Edwin Hatter immediately assigned his interests as a lessee and franchisee to Hatter, Inc. Burger King permitted Edwin Hatter's assignment of the franchise to Hatter, Inc. because Hatter, Inc.'s sole business was directly related to the ownership and operation of Burger King restaurants, 100 percent of the voting common stock was owned by the franchisee, and the ownership and transfer of the corporation's stock was subject to the franchise agreement.

Under the terms of the franchise agreement and of the lease agreement, Hatter, Inc. was required to operate a Burger King restaurant on the premises. The franchise agreement for the restaurant in question was site specific and provided in pertinent part:

> BKC [Burger King Corp.] grants to FRANCHISEE and FRANCHISEE accepts a franchise . . . to use the Burger King System and the Burger King Marks only in the operation of a Burger King Restaurant ("Franchised Restaurant") at North 2120 Argonne Road, Spokane, WA 99206. . . . FRANCHISEE agrees to operate the Franchised Restaurant at the specified

location for the entire nine (9) year Term. . . . This franchise is for the specified location only . . . .

Clerk's Papers at 1499.

> The site at which FRANCHISEE shall operate the Franchised Restaurant is more fully described in Exhibit "A." During the Term of this Agreement the site shall be used exclusively for the purpose of operating a franchised Burger King Restaurant.

Clerk's Papers at 1484. Further, the lease agreement for the property contained a provision consistent with the franchise agreement. "Lessee will operate a Burger King Restaurant on the Demised Premises and the Demised Premises will be used for no other purpose." Clerk's Papers at 621. Unlike the defendants in *Evans*, neither Hatter, Inc. nor Edwin Hatter acquired a right to use the property for any individual purpose unrelated to the operation of a Burger King restaurant. Due to the express limits placed on Hatter, Inc. and Edwin Hatter by these contracts, plaintiffs have not shown either party's persona as land occupier is distinct and totally separate from its persona as employer.

The trial court correctly granted Hatter, Inc.'s and Edwin Hatter's motion for summary judgment. We affirm. The doctrine of "dual persona" cannot be applied to the facts of this case in order to circumvent the exclusive remedy of the IIA and to create potential liability for either of these parties.

### Franchisor

Plaintiffs allege a factual question remains concerning the amount of control Burger King retained over the internal operations of the franchised restaurant which prevented summary judgment. Plaintiffs assert Burger King retained the right to control and supervise the franchised restaurant and, thus, owed a duty to exercise reasonable care in so doing.

Under this theory, the extent of control is the critical inquiry. Plaintiffs established that Burger King extended franchise rights to Hatter in 1991. Burger King's relationship with Hatter is one of franchisor/franchisee and is governed by franchise and lease agreements. The franchise agreement expressly states that a franchisee is an independent contractor and no fiduciary relationship between the parties exists. Despite this, the franchise agreement details certain standards which are established by Burger King for the operation of a restaurant by a franchisee. Many of the procedures and standards for operation and management of a restaurant are stated in Burger King's manual of operating data. These are guidelines for the operation of all Burger King restaurants. Under the franchise contract, the franchisee must adhere to the guidelines or risk termination of the contract.

■■ ■■ The trial court granted Burger King's summary judgment motion finding, as a matter of law, that as a franchisor Burger King owed no duty of care to the employees. In order to establish actionable negligence, a plaintiff must establish: (1) the existence of a duty owed to the complaining party; (2) a breach of the duty; (3) resulting injury; and (4) that the breach was the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). Since a negligence action will not lie if a defendant owed a plaintiff no duty of care, the primary question is whether a duty of care existed. *Hansen*, 118 Wn.2d at 479. The existence of a duty is a question of law. *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).

■■ We have not addressed the issue of whether a duty of care is owed by a franchisor to the employee of a franchisee. Other jurisdictions that have examined this question have generally concluded no duty of care exists. In *Hoffnagle v. McDonald's Co.*, 522 N.W.2d 808 (Iowa 1994), the Supreme Court of Iowa was presented with the question of whether a franchisor may be held liable for injuries suffered by the employee of its franchisee as a result of an assault by a third party. *Hoffnagle*, 522 N.W.2d

at 809-10. The Iowa court determined the appropriate inquiry examined the degree of the franchisor's retained control over the property and the daily operation of the restaurant. *Hoffnagle*, 522 N.W.2d at 813. The court compared the franchisor/franchisee relationship with the employer/independent contractor relationship and applied established independent contractor law to the franchisor case. *Id.*

The *Hoffnagle* court held where the franchisee has the power to control the day-to-day operations, and where the franchisee owns the business equipment, operates the business, holds the operating licenses and permits, determines the wages, provides for the basic training and insurance for the franchisee's employees, and hires, fires, supervises, and disciplines the employees, no duty is created. *Hoffnagle*, 522 N.W.2d at 814. The court found that where McDonald's simply had the authority to require the franchisee to adhere to the "McDonald's system" and did not control the daily operations, the franchisee was independent. *Id.* We agree with and adopt this approach.

This approach is applied in other jurisdictions confronted with similar factual situations. *See Coty v. United States Slicing Mach. Co.*, 58 Ill. App. 3d 237, 242, 373 N.E.2d 1371, 15 Ill. Dec. 687 (1978) (franchisor not liable to franchisee employees' work-related injuries because franchisor's general right to rescind the contract was insufficient retained control); *Barnes v. Wendy's Int'l, Inc.*, 857 S.W.2d 728, 730 (Tex. Ct. App. 1993) (franchisor's right-of-reservation to reenter premises did not give rise to a duty of care to franchisee's employee); *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 682, 455 N.W.2d 390 (1990) (despite franchisor's right to conduct inspections and to hold franchisee in breach of contract, franchisor did not possess sufficient control over daily operations to be held liable); *Hayman v. Ramada Inn, Inc.*, 86 N.C. App. 274, 357 S.E.2d 394 (1987) (franchisor who retained ability to require franchisee to comply with standards, but not to hire and fire employees, did not control day-to-day operations of

motel and was not liable for injury to guest resulting from third party assault). *Compare Martin v. McDonald's Corp.*, 213 Ill. App. 3d 487, 572 N.E.2d 1073, 57 Ill. Dec. 609 (1991) (franchisor who voluntarily undertook responsibility to provide security assumed a duty to provide security and protect against criminal acts of third party even though no such duty was otherwise imposed by law).

In this case, plaintiffs have not established that Burger King retained sufficient control to expose it to liability. In order to retain sufficient control, a franchisor must retain the ability to make decisions concerning the daily operation of the franchised restaurant. The franchise agreement between Burger King and franchisee expressly states that a franchisee is an independent contractor and that Burger King has no control over the terms and conditions of the franchisee's employees. Further, plaintiffs have not shown Burger King retained control over the security of the franchise restaurant. Burger King's authority over the franchise was limited to enforcing and maintaining the uniformity of the Burger King system. We hold, in this case, that plaintiffs have not established or presented facts supporting the theory that the franchisor Burger King owed any duty of care to the employees of the franchisee.

## Duty to Rescue

Plaintiffs claim a "special relationship" arose between employees and Spokane Security under the voluntary rescue doctrine. To support this theory, plaintiffs allege that until June 30, 1991, Spokane Security had contracted with the former operator of the restaurant to provide and maintain a security alarm system for the restaurant. On June 30, 1991, Edwin Hatter, the new franchise owner, terminated the contract. Although Spokane Security closed the account, the security alarm equipment was not removed because Spokane Security "didn't get around to it." Clerk's Papers at 1103. The security system included a button in the freezer, which the employees activated during the rob-

bery. Since the security system remained, Spokane Security received a signal from the alarm and telephoned the restaurant, but found the telephone number disconnected. After determining the account was closed and was labeled "disregard signals," the Spokane Security employee took no further action. Throughout this sequence of events, plaintiffs allege three Washington State Patrol troopers were having coffee at a restaurant across the street. Further, they had their radio scanners on and were prepared to respond to dispatch calls. Plaintiffs argue if the troopers had been dispatched, the murders would have been prevented.

Plaintiffs allege a "special relationship" between Spokane Security and the employees arose out of the contract to provide security and the voluntary act of failing to remove the security equipment. Plaintiffs argue this "special relationship" created the duty of Spokane Security to rescue or attempt to rescue the employees. The trial court granted summary judgment to Spokane Security. Finding no "special relationship" between the plaintiffs and Spokane Security, the trial court determined Spokane Security owed no duty of care to the employees. We affirm the trial court; plaintiffs attempted to weave two theories of tort law together in an effort to impose potential liability on Spokane Security.

Under traditional tort law, absent affirmative conduct or a special relationship, no legal duty to come to the aid of a stranger exists. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56 (5th ed. 1984). Further, a private person does not have the duty to protect others from criminal acts of third parties. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 223, 802 P.2d 1360 (1991). There are exceptions to these traditional rules.[1] An exception may create an affirmative duty to protect an-

---

[1] Restatement (Second) of Torts sections 314A and 314B (1965) identify five relationships that give rise to an affirmative duty to act: (1) common carrier to passengers; (2) innkeeper to guests; (3) possessor of land open to public to visitors; (4) individuals voluntarily controlling another such that opportunities for

other from harm. *Hutchins*, 116 Wn.2d at 227-28. If an exception applies, liability may be imposed despite the absence of negligence. These special relationships typically arise when one party is entrusted with the well-being of the other party. *Webstad v. Stortini*, 83 Wn. App 857, 869, 924 P.2d 940 (1996), *review denied*, 131 Wn.2d 1016 (1997); *Lauritzen v. Lauritzen*, 74 Wn. App. 432, 440, 874 P.2d 861 (1994).

Plaintiffs allege a "special relationship" existed between Spokane Security and the employees, but fail to explain which exception applies. Spokane Security contracted to provide security monitoring for the Burger King restaurant; however, the contract was terminated by Hatter, Inc. 10 months prior to the murders. While the facts indicate the equipment remained in place and was functional, Spokane Security was not contractually obligated to provide security services and plaintiffs have not established there was a legally recognized or established special relationship with the employees. Absent facts to support this theory, plaintiffs' argument fails.

■■ An additional exception to the traditional "no duty to rescue" rule may arise if a defendant takes steps to assist a person in need and acts negligently in rendering that assistance. This duty is not based on a previously established relationship as described above; rather, the duty arises when one party voluntarily begins to assist an individual needing help. Plaintiffs argue Spokane Security voluntarily agreed to render aid when Spokane Security failed to remove the security system. In this case, we must determine whether Spokane Security had a duty to protect the employees under the voluntary rescue doctrine.

The RESTATEMENT (SECOND) OF TORTS section 324A (1965) states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting

---

protection are removed; and (5) employers to employees acting within the scope of employment.

from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Typically, liability for attempting a voluntary rescue has been found when the defendant makes the plaintiff's situation worse by: (1) increasing the danger; (2) misleading the plaintiff into believing the danger had been removed; or (3) depriving the plaintiff of the possibility of help from other sources. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 56 (5th ed. 1984).

Although Washington has not adopted section 324 of the Restatement, *Webstad*, 83 Wn. App. at 874, we recognize that liability can arise from the negligent performance of a voluntarily undertaken duty. A person who undertakes, albeit gratuitously, to render aid to or warn a person in danger is required by Washington law to exercise reasonable care in his or her efforts. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975). If a rescuer fails to exercise such care and consequently increases the risk of harm to those he or she is trying to assist, the rescuer may be liable for physical damage caused. *Brown*, 86 Wn.2d at 299. A person who voluntarily promises to perform a service for another in need has a duty to exercise reasonable care when the promise induces reliance and causes the promisee to refrain from seeking help elsewhere. *Brown*, 86 Wn.2d at 300; *see Chambers-Castanes v. King County*, 100 Wn.2d 275, 287, 669 P.2d 451, 39 A.L.R.4TH 671 (1983) (911 operator's statement that police were on the way to the scene induced reliance). When a defendant undertakes a rescue, a special relationship develops, giving rise to actionable negligence if a defendant breaches the duty of care by failing to act reasonably. Plaintiffs allege a special rela-

tionship arose and argue Spokane Security voluntarily agreed to rescue the employees when it left the security system in place. Plaintiffs allege the act of failing to remove the security system induced reliance and caused harm.

In this case, plaintiffs have failed to establish that the voluntary rescue doctrine applies. The duty to rescue arises when a rescuer knows a danger is present and takes steps to aid an individual in need. *French v. Chase*, 48 Wn.2d 825, 830, 297 P.2d 235 (1956) (rescue doctrine applies when the peril, or reasonable appearance of peril, is imminent); *Brown*, 86 Wn.2d at 298 (summary judgment not granted and duty to rescue doctrine applicable when avalanche danger existed and defendants had opportunity to warn plaintiffs of danger but failed to do so). The act (leaving the system in place) plaintiffs rely on to trigger the voluntary rescue doctrine took place in this case before any danger existed. Plaintiffs suggest that Spokane Security undertook the explicit promise to render aid when it initially entered into the security service agreement with the restaurant. While this may be true, the fact remains that the contract was terminated by the employer. Spokane Security had no further contractual duty.

The plaintiffs have not presented any facts showing Spokane Security knew the tragic events would take place or that Spokane Security negligently withdrew from rescuing once the employees were in danger. Spokane Security did not undertake the duty to aid the employees by failing to remove the security system because the danger was not imminent and the threat of harm was not present. In this case, we decline to adopt a rule where the failure to remove the security system creates an ongoing duty to rescue employees from unknown dangers. Further, the failure of Spokane Security to telephone emergency services does not invoke the voluntary rescue doctrine because the failure to call was not an affirmative act creating the harm, making the situation worse, or inducing reliance.

We affirm the trial court. Applying the facts of this case to traditional tort theories, plaintiffs have not shown that

Spokane Security had a duty to assist the employees. Spokane Security's inaction did not create the danger to the employees, there was no special relationship between Spokane Security and the employees, and the voluntary rescue doctrine is not so broad as to cover the facts of this case.

## CONCLUSION

Reversed in part, affirmed in part.

DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.