[No. 24376-1-III.   Division Three.   July 25, 2006.]

KEY TRONIC CORPORATION, *Appellant*, v. ST. PAUL FIRE AND
MARINE INSURANCE COMPANY, *Respondent*.

*Dale L. Kingman, John C. Gibson,* and *Colleen M. Gutierrez* (of *Kingman, Peabody, Fitzharris & Ringer, P.S.*), for appellant.

*Joseph D. Hampton* and *Daniel L. Syhre* (of *Betts, Patterson & Mines, P.S.*), for respondent.

¶1 KULIK, J. — This is an insurance coverage dispute between a manufacturer, Key Tronic Corporation, and its insurance company, St. Paul Fire and Marine Insurance Company. Key Tronic arranged with Clorox Products Manufacturing Company to make and package a household mop product. The products were damaged through Key Tronic's negligence. Key Tronic paid Clorox for the damage and repackaged the products at its own expense. Only then did Key Tronic file a claim with St. Paul for the loss, including its lost income. The trial court concluded that Key Tronic breached the notice requirements of its policy with St. Paul. The court denied coverage for the loss. We agree and affirm.

## FACTS

¶2 St. Paul insured Key Tronic under a commercial general liability policy. Key Tronic contracted with Clorox to make and package a household mop product known as the "Ready Mop." Clerk's Papers (CP) at 37. Clorox provided Key Tronic with bottles of cleaning fluid, replacement cleaning packs, and flattened cardboard Ready Mop retail packaging. Key Tronic then molded 23 plastic parts for the Ready Mop and obtained the remaining parts from various vendors.

¶3 Key Tronic assembled the Ready Mops. Then Key Tronic constructed retail boxes and displays from materials supplied by Clorox. Key Tronic boxed the mops and placed them in the retail displays. Key Tronic then placed the displays in larger shipping containers provided by Clorox and set these containers on pallets supplied by Key Tronic. Key Tronic shrinkwrapped the shipping containers and the pallets, placed them on trucks, and shipped them from Key Tronic's plant in Juarez, Mexico, to a Key Tronic transfer center. From there, the pallets went to Clorox distribution centers.

¶4 On December 26, 2001, Clorox informed Key Tronic that mold was growing on some of the pallets and packaging material. Also, some of the pallets were infested with beetles. In January 2002, Clorox directed Key Tronic to shut down its Ready Mop assembly line until the mold problem could be solved.

¶5 Clorox's contract required Key Tronic to use kiln dried pallets. Key Tronic had not done so. Key Tronic's failure to use kiln dried pallets caused the loss. Key Tronic and Clorox inspected each pallet, replaced any damaged packaging, and then placed the reworked assemblies on kiln dried pallets. Key Tronic disposed of most of the damaged materials but saved some samples.

¶6 Clorox demanded that Key Tronic assume all responsibility for the costs Clorox incurred repackaging the shipments. Key Tronic agreed and paid Clorox's estimated

reworking expenses. Concerned about possible litigation, Key Tronic concluded that resolving the expense claim with Clorox immediately would minimize the overall financial impact to Key Tronic.

¶7 Key Tronic notified St. Paul of the loss on June 6, 2002, after Key Tronic had settled with Clorox. St. Paul denied coverage. Key Tronic sued for a declaration of insurance coverage. The parties each moved for summary judgment.

¶8 The court granted summary judgment in favor of St. Paul, concluding that Key Tronic breached the St. Paul policy because Key Tronic failed to notify St. Paul "as soon as possible" after the loss. CP at 510. The court also concluded that the loss fell within the "product" exclusion of the policy. Key Tronic appeals.

## ANALYSIS

### *Standard of Review*

■ ¶9 The interpretation of an insurance policy is a question of law. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). The parties here do not dispute the material facts. The only question before us is whether these facts support the trial court's conclusion that the loss is not covered by the policy.

### *Failure To Notify of Loss*

¶10 Key Tronic contends it would have made no difference if Key Tronic had provided notice earlier because St. Paul's decision to deny the claim would have been the same. Key Tronic also maintains that St. Paul cannot demonstrate specific and substantial prejudice. St. Paul responds that Key Tronic's noncompliance with the notice provision of the policy deprives Key Tronic of the policy's benefits

because St. Paul can show actual prejudice resulting from the untimely notice.

¶11 The insurance policy required Key Tronic to notify St. Paul "as soon as possible" of any event that may involve coverage under the policy. CP at 73. Under the policy, Key Tronic agreed not to "assume any financial obligation or pay out any money without [St. Paul's] consent." CP at 74. Key Tronic did not notify St. Paul of the damage until six months after the loss and after Key Tronic settled with Clorox.

¶12 An insurance company can deny coverage for noncompliance with the requirements of an insurance policy only if the noncompliance results in actual prejudice. *Nw. Prosthetic & Orthotic Clinic, Inc. v. Centennial Ins. Co.*, 100 Wn. App. 546, 550, 997 P.2d 972 (2000). The insurer must show prejudice. *Id.*

*Damage or Loss*

¶13 Actual prejudice requires a showing of "some concrete detriment resulting from the delay which harms the insurer's preparation or presentation of defenses to coverage or liability." *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 486, 918 P.2d 937 (1996). A claim of prejudice requires affirmative proof that whatever is lost or changed is material and not otherwise available. The insurer must be able to demonstrate the specifics of an advantage lost or a disadvantage encountered. *Id.* at 491-92. The question is whether the insured's failure to notify prevented the insurer from conducting a meaningful investigation or presenting a viable defense. This is a question of fact, if the facts are disputed. *Nw. Prosthetic*, 100 Wn. App. at 550. But here, the facts are not disputed.

¶14 St. Paul contends it was prejudiced because it was deprived of the opportunity to examine the damaged items before they were destroyed. St. Paul maintains that if it had been notified by Key Tronic, St. Paul could have asked Key Tronic and Clorox to have their workers document the damage. Because of Key Tronic's failure to comply with the

notice provisions in the insurance contract, St. Paul had access only to those samples selected by Key Tronic.

¶15 St. Paul must still show detriment to its ability to prepare or present defenses. Here, Key Tronic put both the nature and the extent of the loss beyond St. Paul's ability to fully investigate. While this may well have been a business decision on the part of Key Tronic, St. Paul was denied the opportunity to investigate and adjust the loss. St. Paul was prejudiced.

*Impaired Property Exclusion*

¶16 Key Tronic argues that the only harm St. Paul can show is the inability to calculate damages. But this, Key Tronic contends, should not implicate coverage. St. Paul responds that it could not meaningfully investigate the question of coverage under the exclusion for impaired property.

¶17 Here, the impaired property provision denies coverage for "property damage to any of your products that's caused by the product itself or by any of its parts . . . nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts." CP at 91. This impaired property exclusion is a defense to coverage.

¶18 The policy covers liability for "property damage." Property damage is "physical damage to tangible property of others." CP at 78. Key Tronic caused damage to its products by using pallets that did not meet contract specifications. Key Tronic admits that it disposed of the evidence needed to evaluate and present a coverage defense under the impaired property provision. St. Paul need only show prejudice to a single defense. The "impaired property" exclusion would have provided that defense.

*Prejudice from Settlement*

¶19 Key Tronic argues that its settlement with Clorox was reasonable, making any need for notice to St. Paul superfluous. But this begs the question. St. Paul had a right

to independently investigate and decide the validity of the claim. St. Paul is not required to defer to Key Tronic's settlement decisions. St. Paul's ability to evaluate or present defenses to coverage was prejudiced by the lack of notice. The trial court properly denied coverage.

¶20 Affirmed.

SWEENEY, C.J., and BROWN, J., concur.

Review denied at 160 Wn.2d 1011 (2007).