# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEITH DAHL, | No. 51455-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| GINA M. FINO; PACIFIC NORTHWEST FORENSIC PATHOLOGISTS, | |
| Appellants. | |

SUTTON, J. — Dr. Gina M. Fino and Pacific Northwest Forensic Pathologists[1] (collectively Fino) appeal the superior court's order denying their motion for summary judgment. Fino argues that the trial court erred because (1) she is entitled to immunity from civil liability for performing a statutorily authorized autopsy using the undisputed method and procedure for "determining the cause and manner of death" as provided by RCW 68.50.015, (2) she did not owe Keith Dahl, the father of the decedent, a duty as a matter of law, (3) Dahl cannot raise a genuine issue of material fact as to Fino's intentional conduct beyond the statutory authority of RCW 68.50.100 and RCW 68.50.106 for the claim of intentional misuse of a corpse, and (4) Dahl cannot raise a genuine issue of material fact as to the essential element of presence at the injury-causing incident for the

---

[1] Pacific Northwest Forensic Pathologists was named as a defendant because it employed Dr. Fino who, at the time she conducted the autopsy at issue, acted at the direction of the Mason County coroner.

claims of intentional and negligent infliction of emotional distress. Dahl argues that RCW 68.50.015 provides Fino with limited immunity that does not bar any of his claims and that the superior court properly denied the motion for summary judgment.

We hold that Dahl cannot demonstrate that Fino owed him a duty beyond that which was owed to the general public under the public duty doctrine and there are no genuine issues of material fact on this issue. Fino is entitled to summary judgment on the negligence claim, the intentional and negligent interference of a corpse claims, and the intentional and negligent infliction of emotional distress claims.[2] Thus, the superior court erred by denying Fino's summary judgment motion. We reverse the order denying summary judgment and remand for entry of an order of judgment in favor of Fino and dismissing with prejudice Dahl's claims against Fino.

FACTS

On September 13, 2015, Brandon Dahl[3] was arrested and booked into the Mason County Jail. Several inmates attacked him and beat him, resulting in hemorrhages, contusions, and abrasions to Brandon's head and body. The jail transferred him to a different unit without providing any medical care for his injuries. Three days after his arrest, Brandon died as a result of an apparent hanging.

After Brandon's death, the Mason County coroner, under RCW 68.50.010, took jurisdiction over the body to investigate the cause and manner of death because the death was

---

[2] Based on our disposition, we do not reach the issue of immunity.

[3] For clarity this prehearing refers to Brandon Dahl by his first name and as the decedent. We mean no disrespect.

allegedly the result of hanging. The coroner directed Dr. Fino, a forensic pathologist, to conduct an autopsy under the authority of RCW 68.50.106.[4] Fino dissected the body and internal organs, including the brain, and determined that the cause of death was asphyxia due to hanging and the manner of death was suicide. She closed the body for burial. The coroner then released the body to the family.

Dahl, Brandon's father, arranged for a second autopsy to be performed by pathologist Dr. Bennet Omalu. Omalu issued a report in which he strongly criticized many aspects of Fino's autopsy.

Dahl sued Fino and her employer, Pacific Northwest Forensic Pathologists, for professional negligence, intentional misuse of a corpse, and both intentional and negligent infliction of emotional distress alleging that Fino's dissection of the brain was a "mutilation" which resulted in emotional distress to him. Clerk's Papers (CP) at 4.

Fino and her employer filed a motion for summary judgment on all claims. Fino alleged that she was immune from civil liability under RCW 68.50.015 for performing a statutorily authorized autopsy which was the undisputed method and procedure of determining the cause and manner of death. Fino also alleged that Dahl failed to produce evidence to support a prima facie

---

[4] Under RCW 68.50.106, "In any case in which an autopsy or postmortem is performed, the coroner or medical examiner, upon his or her own authority or upon the request of the prosecuting attorney or other law enforcement agency having jurisdiction, may make or cause to be made an analysis of the stomach contents, blood, or organs, or tissues of a deceased person and secure professional opinions thereon and retain or dispose of any specimens or organs of the deceased which in his or her discretion are desirable or needful for anatomic, bacteriological, chemical, or toxicological examination or upon lawful request are needed or desired for evidence to be presented in court. Costs shall be borne by the county."

case on the claims and that she was entitled to summary judgment dismissal of all claims as a matter of law. The superior court denied the motion for summary judgment, reasoning that RCW 68.50.015's grant of immunity "is not as broad as the moving party asserts but is more limited to a particular type of civil liability as testified [to] in the statute itself." Report of Proceedings (RP) at 26. The superior court certified its order for immediate review under RAP 2.3(b)(4). CP at 425. A commissioner of this court granted discretionary review.[5]

## ANALYSIS

### I. STANDARDS OF REVIEW

We review a superior court's ruling on summary judgment de novo. *Schibel v. Eymann*, 189 Wn.2d 93, 98, 399 P.3d 1129 (2017). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Schibel*, 189 Wn.2d at 98; CR 56(c). When evaluating the evidence on summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Piris v. Kitching*, 185 Wn.2d 856, 861, 375 P.3d 627 (2016).

The party opposing summary judgment dismissal cannot rely on allegations made in pleadings, but must present evidence, usually in the form of affidavits or declarations based on personal knowledge, showing that the affiant is competent to testify to the matters therein and setting "'forth specific facts showing that there is a genuine issue for trial'" in order to defeat the motion. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989) (quoting CR 56(e)).

---

[5] Ruling Granting Review (May 10, 2018).

The meaning of a statute is a question of law that is also subject to de novo review. *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012).

## II. PUBLIC DUTY DOCTRINE

Fino argues that Dahl cannot establish that she owed a duty to *him* "'to conduct an autopsy of his son's body in accordance with the degree of skill, ability, and learning common to forensic pathologists,'" rather than to the public in general. Br. of Appellants at 34 (quoting CP at 192). Therefore, Fino argues, she is entitled to dismissal of Dahl's negligence claim as a matter of law. We hold that the superior court erred by denying Fino's motion for summary judgment for the negligence claim because Dahl cannot demonstrate that Fino owed him a duty beyond that which was owed to the general public, and the public duty doctrine bars Dahl's claim.

To establish actionable negligence, a plaintiff must demonstrate the following: "(1) the existence of a duty owed to the complaining party, (2) a breach of that duty, (3) resulting injury, and (4) that the breach was the proximate cause of the injury." *Folsom v. Burger King*, 135 Wn.2d 658, 671, 958 P.2d 301 (1998). Because "a negligence action will not lie if a defendant owed a plaintiff no duty of care, the primary question is whether a duty of care existed." *Folsom*, 135 Wn.2d at 671. "The existence of a duty is a question of law." *Folsom*, 135 Wn.2d at 671.

"Whether the defendant is a governmental entity or a private person, to be actionable, the duty must be one owed to the injured plaintiff, and *not* one owed to the public in general." *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988) (emphasis added). "Under the public duty doctrine," which is a "basic principle of negligence law," liability may not be imposed unless "'the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general (*i.e.*, a duty to all is a duty to no one).'" *Taylor*, 111

5

Wn.2d at 163 (quoting *J & B Dev. Co. v. King County*, 100 Wn.2d 299, 303, 669 P.2d 468 (1983).

"The public duty doctrine is a focusing tool used to determine whether the defendant owed a duty

to the public or a particular individual." *Fabre v. Town of Ruston*, 180 Wn. App. 150, 159, 321

P.3d 1208 (2014). The plaintiff in a negligence action has the burden of establishing that the

defendant breached a duty owed to him or her individually, rather than to the public at large. *Seiber*

*v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 738, 150 P.3d 633 (2007).

"There are four exceptions to the public duty doctrine: (1) legislative intent, (2) failure to

enforce, (3) the rescue doctrine, and (4) a special relationship." *Munich v. Skagit Emergency*

*Commc'n Ctr.*, 175 Wn.2d 871, 879, 288 P.3d 328 (2012). "If any one of the exceptions applies,

[the defendant] is held as a matter of law to owe a duty to the plaintiff." *Munich*, 175 Wn.2d at

879.

Here, the coroner had jurisdiction of Brandon's body under RCW 68.50.010[6] and directed

Fino to conduct an autopsy with the costs to be borne by the county under RCW 68.50.100[7] and

RCW 68.50.106. In this context, Fino's dissection of the body was a governmental function

---

[6] Under RCW 68.50.010, "The jurisdiction of bodies . . . where the circumstances of death indicate death was caused by unnatural or unlawful means; . . . [or] where death apparently results from . . . hanging . . . ; [or] where death occurs in a jail or prison; . . . is hereby vested in the county coroner, which bodies may be removed and placed in the morgue under such rules as are adopted by the coroner with the approval of the county commissioners, having jurisdiction, providing therein how the bodies shall be brought to and cared for at the morgue and held for the proper identification where necessary."

[7] Under RCW 68.50.100(1), "The right to dissect a dead body shall be limited to cases specially provided by statute or by the direction or will of the deceased; cases where a coroner is authorized to hold an inquest upon the body, and then only as he or she may authorize dissection; . . . PROVIDED, [t]hat the coroner, in his or her discretion, may make or cause to be made by a competent pathologist, toxicologist, or physician, an autopsy or postmortem in any case in which the coroner has jurisdiction of a body[.]"

performed for a public purpose. As a result, unless an exception applies, the public duty doctrine bars Dahl's claim.

A. SPECIAL RELATIONSHIP EXCEPTION

Dahl argues that the special relationship exception to the public duty doctrine applies because he was a reasonably foreseeable plaintiff under the statutory framework governing Fino's work related to Brandon's autopsy. We disagree.

"A special relationship . . . will exist and thereby give rise to an actionable duty, if three elements are established: (1) direct contact or privity between the [defendant] and the plaintiff that sets the plaintiff apart from the general public, (2) an express assurance given by the [defendant], *and* (3) justifiable reliance on the assurance by the plaintiff." *Munich*, 175 Wn.2d at 879 (emphasis added). All three elements must be met. *Munich*, 175 Wn.2d at 879. If one element is not satisfied, the exception does not apply. *Munich*, 175 Wn.2d at 879.

As to the second element, Dahl argues that he had an *implied* assurance under Chapter 68.50 RCW that Fino "would perform the autopsy on his son competently and in a way that did not interfere with his specifically vested rights." Br. of Resp't at 35. However, a government duty cannot arise from an *implied* assurance. *See Taylor*, 111 Wn.2d at 166. Because Dahl does not identify any express assurance given to him by either Fino or the Mason County Coroner or any other public official, the second element is not met. Because this element is not met, the special relationship exception to the public duty doctrine does not apply.

Because the elements required for the special relationship exception to the public duty doctrine are not met, the special relationship exception does not apply here. Accordingly, we hold

that Dahl cannot establish that Fino owed him a duty under the special relationship exception to the public duty doctrine.

B. LEGISLATIVE INTENT EXCEPTION

Dahl argues that even if there is not a special relationship here, there is a legislative intent in the statutory scheme governing Fino's actions to protect a certain class of people—family members of decedents—under the jurisdiction of coroners and medical examiners. Dahl cites RCW 68.50.105(3)(b) and RCW 68.50.150(3)(e) in support of his position.[8] We disagree.

The legislative intent exception to the public duty doctrine applies where a "statute by its terms evidences a clear legislative intent to identify and protect a particular and circumscribed class of persons." *Honcoop v. State*, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988). In addition to family members, RCW 68.50.105(1)[9] provides that

> [r]eports and records of autopsies or postmortems shall be confidential, except that the following persons may examine and obtain copies of any such report or record: The personal representative of the decedent as defined in RCW 11.02.005, any family member, the attending physician or advanced registered nurse practitioner, the prosecuting attorney or law enforcement agencies having jurisdiction, public health officials, the department of labor and industries in cases in which it has an interest under RCW 68.50.103, or the secretary of the department of children, youth, and families or his or her designee in cases being reviewed under RCW 74.13.640.

---

[8] RCW 68.50.105(3) does not contain further subsections and RCW 68.50.150 was repealed in 2005, LAWS OF 2005, ch. 365, § 161. Presumably, Dahl intended to cite RCW 68.50.160(3)(e) which establishes that the surviving parents of the decedent have a right to control the disposition of the remains of a deceased person.

[9] The legislature amended RCW 68.50.105 in 2019. LAWS OF 2019, ch. 470, § 14(1). Because these amendments are not relevant here, we cite to the current version of this statute.

Under the plain language of the statute, RCW 68.50.105 does *not* evidence a clear legislative intent to identify and protect a particular class of persons.

Additionally, RCW 68.50.160(3) does not address any duty of the coroner, but merely prioritizes those who may direct disposition of human remains. Under RCW 68.50.160(3)(e),

> If the decedent has not made a prearrangement . . . or the costs of executing the decedent's wishes regarding the disposition of the decedent's remains exceeds a reasonable amount or directions have not been given by the decedent, the right to control the disposition of the remains of a deceased person vests in, and the duty of disposition and the liability for the reasonable cost of preparation, care, and disposition of such remains devolves upon the following in the order named:
>
> . . . .
>
> (e) The surviving parents of the decedent[.]

Under the plain language of the statute, RCW 68.50.160(3) does not evidence a clear legislative intent to identify and protect a particular class of persons; it merely lists the order in which responsibility falls to various people in relation to the decedent.

Because neither RCW 68.50.105 nor RCW 68.50.160 contemplate a specific duty regarding the performance of an autopsy to a particular and circumscribed class of persons, the legislative intent exception does not apply here. Accordingly, we hold that Dahl cannot establish that Fino owed him a duty under the legislative intent exception to the public duty doctrine.

Dahl cannot demonstrate that Fino owed him a duty beyond a duty owed to the general public; therefore, the superior court erred by denying Fino's motion for summary judgment based on the public duty doctrine.

### III. INTENTIONAL AND NEGLIGENT MISUSE OF A CORPSE

Fino argues that because there is no genuine issue of material fact as to the intentional conduct and there is no recognized claim for negligent misuse of a corpse, the superior court erred by not dismissing Dahl's claim for intentional misuse of a corpse. We agree.

A claim for intentional misuse of a corpse is an intentional tort based on an interest in the proper treatment of a corpse and allowing recovery for the plaintiff's mental suffering "directly result[ing] from a willful wrong and not merely a negligent act." *Whitney v. Cervantes*, 182 Wn. App. 64, 73, 328 P.3d 957 (2014). "Washington law does not recognize an action for negligent interference with a dead body." *Whitney*, 182 Wn. App. at 74. Our Supreme Court has explicitly declined the opportunity to expand the cause of action to include negligent conduct. *Adams v. King County*, 164 Wn.2d 640, 657 n.9, 192 P.3d 891 (2008) (noting that it had not adopted the Restatement (Second) of Torts § 868 (1979), which permits liability for negligent interference with a corpse, and had previously "rejected a claim of negligent misuse because recovery is premised on mental suffering").

In response to Fino's motion for summary judgment, Dahl presented Omalu's medico-legal report and autopsy report along with the report of Dahl's psychological evaluation. Omalu's two reports criticized the manner in which Fino dissected Brandon's body and the psychologist offered an opinion about Dahl's mental state. However, Omalu's report offered no evidence or opinion that Fino had intentionally misused or mutilated the brain or body in any manner other than dissecting it.

There is no question that Fino intentionally dissected the body. However, it is also undisputed that Fino had the statutory authority and the discretion to dissect the body without

obtaining the consent from the family based on the circumstances surrounding Brandon's death. RCW 68.50.010, RCW 68.50.100, RCW 68.50.106.

Dahl analogizes this case to *Adams v. King County*. He argues that the alleged pulverization of the decedent's brain "is effectively no different than 'removal of the entire brain,'" as was at issue in *Adams*. Br. of Resp't at 40-41 (quoting *Adams*, 164 Wn.2d at 659). However, this case is factually distinct from *Adams*. The coroner in that case removed the brain from the body of the decedent, kept the brain for scientific research, and returned the body to the decedent's family. *Adams*, 164 Wn.2d at 646. Our Supreme Court held in that case that such conduct "causes mental suffering as would an improper burial or use of a body as collateral for payment of a debt." *Adams*, 164 Wn.2d at 659.

Here, Fino performed a statutorily authorized autopsy to determine and manner and cause of death and determined that the cause of death was asphyxia due to hanging and the manner of death was suicide.

Because the evidence Dahl provided cannot establish intentional conduct by Fino for an unauthorized purpose, Dahl's claim for intentional interference with a corpse fails. Because Dahl cannot raise a genuine issue of material fact to support his claim for intentional interference with a corpse and there is no cognizable claim for negligent interference, Fino is entitled to judgment as a matter of law on these claims. We hold that the superior court erred by denying Fino's motion for summary judgment of the intentional and negligent misuse of a corpse claims.

IV. PRESENCE AT ALLEGED INJURY-CAUSING EVENT

Fino argues that the superior court erred by denying summary judgment on Dahl's claims for intentional and negligent infliction of emotional distress because Dahl cannot raise a genuine

issue of material fact as to the essential element of presence at the injury-causing incident. We agree.

The intentional tort of outrage, also known as intentional infliction of emotional distress, includes three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). Negligent infliction of emotional distress includes the "established concepts of duty, breach, proximate cause, and damage or injury." *Hunsley v. Giard*, 87 Wn.2d 424, 434, 553 P.2d 1096 (1976). To establish a prima facie case for either cause of action, the plaintiff must be present at the time of the alleged conduct at issue. *Reid v. Pierce County*, 136 Wn.2d 195, 203-04, 961 P.2d 333 (1998) (holding that plaintiffs who were not present when employees of a medical examiner's office engaged in arguably outrageous conduct could not maintain cause of action for either intentional or negligent infliction of emotional distress).

It is undisputed that Dahl was not present when Fino conducted the autopsy of Brandon's body; therefore, he has no cause of action for either intentional or negligent infliction of emotional distress under well-established case law. *Reid*, 136 Wn.2d at 203-04. The superior court erred by denying Fino's motion for summary judgment of these claims.

## CONCLUSION

We hold that Dahl cannot demonstrate that Fino owed him a duty beyond that which was owed to the general public under the public duty doctrine, and there are no genuine issues of material fact on this issue. Fino is entitled to summary judgment on the negligence claim, the intentional and negligent interference of a corpse claims, and the intentional and negligent

No. 51455-9-II

infliction of emotional distress claims.  Thus, the superior court erred by denying Fino's summary judgment motion.  We reverse the order denying summary judgment and remand for entry of an order of judgment in favor of Fino and dismissing with prejudice Dahl's claims against Fino.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.