FILED
COURT OF APPEALS
DIVISION II

2014 APR 23 PM 2: 29

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL S. MICHELBRINK, JR., a single man,<br><br>                  Respondent,<br><br>v.<br><br>STATE OF WASHINGTON, WASHINGTON STATE PATROL,<br><br>                  Appellant. | No. 44035-1-II<br><br><br><br><br><br>PUBLISHED OPINION |

HUNT, J. — The Washington State Patrol (WSP) appeals the superior court's denial of its motion for summary judgment[1] against Michael S. Michelbrink, Jr. in his action for deliberately intentional infliction of "certain injury"[2] from being shot with a Taser during WSP training. WSP argues that the superior erred in denying its motion for summary judgment because (1) the Industrial Insurance Act (Act), Title 51 RCW, grants WSP immunity from tort liability for Michelbrink's workplace injury; (2) there was no evidence that WSP intended to cause "certain injury"; (3) WSP neither had knowledge of nor willfully disregarded that actual injury was

---

[1] Our court commissioner previously granted WSP's petition for discretionary review.

[2] *See Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 18, 109 P.3d 805 (2005). The term "certain injury" has important legal meaning in the context of a case like this one, which involves an asserted statutory exception to an employer's usual immunity from lawsuit for workplace injuries. As we explain more fully in the analysis portion of this opinion, "certain injury" means that the employer knew that the injury would actually occur.

certain to occur; and (4) Michelbrink improperly pled his outrage claim and, in any event, the Act bars such a claim. Michelbrink responds that he presented a genuine issue of material fact warranting denial of summary judgment to WSP and that we improvidently granted discretionary review. Holding that Michelbrink presented a genuine issue of material fact on his claim that WSP intentionally inflicted "certain injury," we affirm the superior court's denial of WSP's motion for summary judgment and remand for trial.

## FACTS

### I. BACKGROUND

#### A. Workplace Taser Injury

Michael S. Michelbrink, Jr. was commissioned as a WSP trooper on March 1, 1999. In the following years, WSP researched the use of Tasers[3] as a possible law enforcement tool. WSP purchased Tasers in 2006 and implemented a Taser training program for its troopers. Echoing the manufacturer's warnings, WSP's Taser training manual warns that Taser exposure may cause "cuts, bruises and abrasions caused by falling, strain related injuries from strong muscle contractions such as muscle or tendon tears, or stress fractures," and other "potential injuries." Clerk's Papers (CP) at 136.

On August 10, 2007, Michelbrink participated in a WSP Taser training course. At that time, Taser training was required for all troopers who opted to use a Taser on the job (WSP

---

[3] A Taser is an electronic device that shoots two electrified dart-like barbed probes into the recipient's back to conduct an electrical current that causes the recipient's muscles to seize up and to convulse, temporarily incapacitating him or her. According to the manufacturer, Taser International, Inc., a Taser "can cause strong muscle contractions that may cause physical . . . injuries . . . and may result in secondary injuries," including elevating the risks "of serious injury or death." CP at 135.

training materials explained to troopers why Taser exposure was mandatory and medical certification was required for all WSP troopers before Taser training). WSP had medically certified Michelbrink to be fit for duty, and he had reported no pre-existing condition to WSP. WSP's Taser instructor exposed every trainee, including Michelbrink, to the Taser, for one to five seconds. As WSP expected, the Taser exposure caused Michelbrink instant temporary pain, discomfort, trouble breathing, and incapacitation. Michelbrink was later diagnosed with a fracture in his vertebrae and a "bulged disc."[4] CP at 32.

## B. Worker's Compensation Claim

Two weeks after the Taser incident, on August 27, 2007, Michelbrink filed a worker's compensation claim with the Department of Labor and Industries (Department), asserting that he had sustained a back injury during WSP training. The Department accepted his claim and granted him worker's compensation medical benefits; the WSP Chief approved Michelbrink's request for temporary disability leave, effective August 31, 2007, on grounds that Michelbrink was physically unable to perform his duties. While on temporary disability leave, Michelbrink received full pay and benefits; after this disability leave expired on March 1, 2008, Michelbrink used his accumulated sick leave.

Three and one-half months later, on June 12, Michelbrink's physician released him to work in a limited duty position for four hours per day; and WSP assigned Michelbrink to a part-time, limited duty position. On August 11, WSP extended this limited duty assignment and

---

[4] WSP was aware of at least one other training incident in which an individual exposed to a Taser had suffered a fracture. In that incident, WSP had contacted the manufacturer to find out "information on other people that had a serious fracture"; but the record does not reflect any response to this inquiry. CP at 133.

informed Michelbrink that he would continue to work part-time until his physician determined that he was capable of returning to full-time duty. During this part-time assignment, Michelbrink applied for and received loss of earnings benefits from the Department.

On January 13, 2009, after Michelbrink's physician had released him to work in a limited duty position for eight hours per day, WSP assigned Michelbrink to a temporary, full-time, limited duty position. On April 23, the WSP Chief approved Michelbrink's request for a long-term limited-duty position; WSP assigned him to be a background investigator in its Human Resources Division, where he continued to receive the same benefits and pay as other troopers. On May 18, the Department "awarded" Michelbrink a "Category 2 permanent thoracic spine impairment." CP at 36.

## II. PROCEDURE

### A. Lawsuit; Denial of Summary Judgment to WSP

A few months later, Michelbrink sued WSP, alleging that it had "deliberate[ly] inten[ded]" to cause him certain injury when it exposed him to the Taser during training. CP at 3. WSP moved for summary judgment dismissal of Michelbrink's action on the ground that the Act barred this civil lawsuit because Michelbrink had already received worker's compensation benefits for his injuries incurred during the WSP Taser training, which by law was his exclusive remedy. In his response to WSP's motion, Michelbrink attempted to assert an additional claim for outrage.[5] The trial court denied WSP's motion for summary judgment.

---

[5] The record before us on appeal does not show whether Michelbrink ever moved to amend his complaint to add the outrage claim.

4

## B. Interlocutory Discretionary Review

Our court commissioner granted WSP's petition for discretionary review. We denied Michelbrink's motion to modify our commissioner's grant of discretionary review, rejecting Michelbrink's argument that our commissioner had improvidently granted review. We now address WSP's interlocutory appeal from the superior court's denial of its motion for summary judgment.[6]

## ANALYSIS

WSP argues that the superior court erred in denying its motion for summary judgment because, as a matter of law, its provision of worker's compensation benefits under the Industrial Insurance Act immunized it from separate tort liability for Michelbrink's workplace injuries.[7] Michelbrink counters that the superior court properly denied WSP summary judgment because (1) WSP knew that the Taser would cause "certain injury" during trooper training; (2) WSP nevertheless deliberately subjected its troopers to such injury; and (3) he raised a genuine issue of material fact about whether WSP knew and willfully disregarded certain injury and, therefore, his injuries fell outside the scope of employer immunity under the Act.[8] We agree with Michelbrink.

---

[6] Our court commissioner stayed the superior court proceedings pending this appeal.

[7] WSP also argues that the superior court erred in allowing Michelbrink's outrage claim "to proceed" because Michelbrink failed to amend his complaint to add this claim. Br. of Appellant at 15. Because Michelbrink's outrage claim is beyond the narrow scope of our interlocutory discretionary review, we do not address this WSP argument.

[8] We do not address Michelbrink's argument that our commissioner improvidently granted review because we already rejected that argument when we denied his earlier motion to modify the commissioner's ruling granting discretionary review.

## I. STANDARDS OF REVIEW

We review de novo the superior court's denial of WSP's motion for summary judgment, engaging in the same inquiry as the superior court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407, 282 P.3d 1069 (2012). Generally, the party moving for summary judgment, here, WSP, bears the burden of showing there is no genuine issue of material fact for trial. *Elcon Const. Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012). The superior court should grant summary judgment only if,

> "after considering all the pleadings, affidavits, depositions or admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party, it can be said (1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law."

*Walston v. Boeing Co.*, 173 Wn. App. 271, 279, 294 P.3d 759 (2013) (quoting *Baker v. Schatz*, 80 Wn. App. 775, 782, 912 P.2d 501 (1996)).[9]

The Act creates a worker's compensation scheme that provides an employee's sole remedy for workplace injuries.[10] RCW 51.04.010. For this reason, the legislature directs us to construe the Act "liberally . . . for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW

---

[9] *Review granted*, 177 Wn.2d 1019 (2013) (oral argument heard February 13, 2014, cause no. 88511-7).

[10] As our Supreme Court has consistently explained,
> In 1911, as the result of a "grand compromise," the [Act] granted Washington employers immunity from lawsuits arising from workplace injuries. [*Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995)]. In exchange, the [Act] created an exclusive workers' compensation system that provided swift and certain recovery for injured employees, regardless of fault. *Id.*; RCW 51.04.010.

*Vallandigham*, 154 Wn.2d at 26-27.

51.12.010. Thus, we must also liberally construe the legislature's exception to the Act's otherwise exclusive coverage when "injury results to a worker from the *deliberate intention* of his or her employer to produce such injury." RCW 51.24.020 (emphasis added).

## II. DELIBERATE INTENTIONAL INJURY EXCEPTION TO ACT'S EMPLOYER IMMUNITY

WSP argues that RCW 51.24.020 bars Michelbrink's tort action as a matter of law. Michelbrink counters that his claim—that WSP deliberately and intentionally injured him—removes him from the Act's otherwise exclusive workplace injury coverage. We agree with Michelbrink.

In general, the Act immunizes employers from employee lawsuits for injuries in the course of their employment. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). Nevertheless, an employee may circumvent this immunity and file a lawsuit for additional damages in excess of his worker's compensation benefits if the employer deliberately intended to cause certain injury to the employee. *Vallandigham*, 154 Wn.2d at 27. As RCW 51.24.020 provides:

> If injury results to a worker from the *deliberate intention* of his or her employer to produce such injury, the worker . . . shall have . . . *cause of action* against the employer *as if this title had not been enacted*, for any damages in excess of compensation and benefits paid or payable under this title.

(Emphasis added). Although no statute defines RCW 51.24.020's term "deliberate intention," our Supreme Court has held that it

> means (1) 'the employer had *actual knowledge* that an *injury* was *certain to occur*' and (2) the employer '*willfully disregarded that knowledge*.' . . .

7

> Disregard of a *risk* of injury is not sufficient to meet the first *Birklid* prong; *certainty of actual harm must be known and ignored.*[11]

*Vallandigham*, 154 Wn.2d at 27-28 (emphasis added) (internal citations omitted) (quoting *Birklid v. Boeing Co.*, 127 Wn.2d 853, 865, 904 P.2d 278 (1995)).[12] Applying this standard here, we must determine whether Michelbrink raised an issue of material fact about whether WSP knew and willfully disregarded that injury from its Taser training was certain to occur.

A. WSP's Knowledge of "Certain Injury": Question of Law and Fact

WSP admits it was aware that its law enforcement training necessarily carried the *risk* of injury; but WSP argues it could not have been *certain* that the Taser training would cause the *serious* injuries that Michelbrink suffered. Michelbrink counters that the superior court properly denied summary judgment to WSP because there are genuine issues of material fact about whether WSP knew that Taser exposure would cause "certain injury."

1. Certainty of injury

The record contains the following evidence of certain injury, about which WSP had knowledge: A Taser is an electronic device that uses propelled wires or direct contact to conduct electrical energy to incapacitate its target. Taser exposure involves two electrified dart-like probes being shot into the recipient's back; on contact, these probes transmit an electrical charge that causes the recipient's muscles to seize up and to convulse and affects "sensory and motor

---

[11] "'[E]ven an act that has *substantial certainty* of producing injury does not rise to the level of specific intent to cause injury.'" *Vallandigham*, 154 Wn.2d at 29 (quoting *Folsom v. Burger King*, 135 Wn.2d 658, 665, 958 P.2d 301 (1998)).

[12] *Vallandigham* emphasized that Washington courts have found only the first prong of the *Birklid* test met in limited scenarios, most of which involved repeated exposure to toxic chemicals. *Vallandigham*, 154 Wn.2d at 30-31.

functions," temporarily incapacitating him or her. CP at 48. Taser International, Inc.'s product materials explained that the Taser probe's barbs cause "wounds," which "[i]n most areas of the body" will be "minor." CP at 135.[13]

WSP's Lead Firearms Instructor Mark Tegard, responsible for the development of WSP's "Agency Taser Program" and training "all agency personnel who were issued a Taser," knew about the following injuries from Tasers: "[T]he *most typical* effects of [a Taser] exposure included temporary pain, minor skin irritation, temporary blisters, and redness or minor bleeding if the Taser probes punctured the skin." CP at 48, 54 (emphasis added). We cannot tell from the truncated pre-trial record before us the degree of "certainty" Tegard meant when he described the

---

[13] "In most areas of the body, wounds caused by [Taser] probes will be minor. [Taser] probes have small barbs." CP at 135. The Taser manufacturer also provided the following additional warnings about apparently "less certain" risks of injury:

> 4. The [Taser] device *can cause* strong muscle contractions that *may cause* physical exertion or athletic-type injuries to some people. These muscle contractions *can result* in strain-type injuries such as hernias, ruptures, or other injuries to soft tissue, organs, muscles, tendons, ligaments, nerves, joints, and stress/compression fractures to bones, including vertebrae. . . . .
> 5. These strong muscle contractions *usually* render a subject temporarily unable to control his or her movements and *may result* in secondary injuries. Under certain circumstances, this loss of control *can elevate the risk(s)* of serious injury or death.
>
> . . . .
>
> 10. Use of a [Taser] device in drive (or touch) stun mode *can cause* marks, friction abrasions, and/or scarring that *may be permanent* depending on individual susceptibilities or circumstances surrounding [Taser] device use and exposure.

CP at 135 (emphasis added). To the extent that these additional warnings describe only possible injuries that "usually," "may," or "can" occur, for purposes of our analysis we agree with WSP that Michelbrink cannot use them to meet the first prong of the *Birklid* test, knowledge of "certain injury," to defeat summary judgment. *Vallandigham*, 154 Wn.2d at 33 (citing *Birklid*, 127 Wn.2d at 865).

In so noting, however, it is not our intent to opine about the admissibility at trial of these additional warnings and of other such potential evidence of WSP's knowledge of the risks involved in its Taser training.

Taser's "most typical effects." CP at 54.[14] Nevertheless, taken in the light most favorable to

Michelbrink on summary judgment, Tegard's declaration sufficiently describes "certain injury"

for purposes of establishing an issue of material fact to warrant going to trial and subjecting him

to cross-examination on this subject.[15] *See Vallandigham*, 154 Wn.2d at 33 (citing *Birklid*, 127

---

[14] WSP's own training materials described the following potential effects from Taser exposure:
   ·**Puncture wounds**: The two probes impact with a velocity of approximately 165 ft/sec. and are *capable of penetrating up to* ¼ [inch] *into the flesh. Extreme care must be taken to avoid injury to sensitive areas*, especially the eyes, where serious permanent injury could occur. . . .
   ·**Skin Irritation:** The [Taser] weapons *can cause minor signature marks* on the skin similar to a minor burn in the areas where probes or clips are attached. Also, minor bleeding may occur if the probes penetrate the skin.
CP at 94 (emphasis added). Unlike Tegard's declaration, however, we do not interpret WSP's training materials as establishing certain injury for purposes of defeating summary judgment here.

[15] Last year the Montana Supreme court addressed a somewhat analogous "certain injury" issue but reached a different result on slightly different grounds in *Harris v. Dep't of Corrections*, 368 Mont. 276, 294 P.3d 382 (2013). Despite its similar Taser injury facts, we decline to apply this Montana case here because, in our view, our courts should not similarly craft and impose additional requirements onto our legislatively crafted state workers' compensation scheme; rather, such changes are the province of our legislature, not our courts.
     After the Montana Department of Corrections intentionally exposed one of its employees to a Taser during mandatory training, the employee, Harris, brought an intentional tort action against the state under Montana's Industrial Insurance Act, MCA 39-71-413. *Harris*, 368 Mont. at 279-80. Like Washington's Act, the Montana act has an "intentional injury" provision with "deliberate intent" and "knowledge of actual harm" requirements, which allows a tort action against an employer. *Compare* MCA 39-71-413 and RCW 51.24.020. Also as with Washington's Act, the Montana employee needed to "identify . . . evidence that [the State] had actual knowledge that [the employee's] exposure to the [T]aser was certain to injure him." *Harris*, 368 Mont. at 284. Affirming the superior court's grant of summary judgment to the State and dismissal of the employee's complaint, the Montana Supreme Court held that the employee had failed to show that the State "had certain knowledge that any of the employees would be harmed." *Harris*, 368 Mont. at 287. Unlike Washington's *Birklid* test, however, the Montana Supreme Court appears to have injected an additional judicially crafted requirement into Montana's scheme when it also held that Harris had "failed to provide any evidence from which [it] can infer that the [Department of Correction's] intent was to harm *rather than educate and train*." *Harris*, 368 Mont. at 284 (emphasis added).

Wn.2d at 865). We hold that in this summary judgment context, Tegard's description of the Taser's "most typical effects,"[16] together with the Taser manufacturer's warning that Taser probes cause "wounds,"[17] were sufficient evidence of "certain injury" to create a material issue of fact.

## 2. Extent of injury

The Act's exception to employer immunity contains no language making a civil action for excess damages contingent on the severity of the initial injury that an employer deliberately causes in disregard of its knowledge that its action will always produce this "certain injury."

---

To our knowledge, neither *Birklid* nor any other Washington case has held that an *exclusive* "intent to harm" (apparently unaccompanied by intent to achieve other goals, such as to educate) is a prerequisite for the Act's intentional injury exception to employer immunity for worker injury. Here, as in the Montana case, WSP's objective was both to educate and to train its troopers in the use of Tasers; and, taken in the light most favorable to Michelbrink, the evidence on summary judgment shows that WSP exposed participating troopers to Tasers knowing they would be injured. But WSP's knowledge of this certain injury was not the same as acting with an intent to harm to the exclusion of other purposes, such as education, as *Harris* apparently required under Montana's somewhat analogous statutory scheme.

In rejecting Montana's judicial incorporation of an additional "intent to harm" requirement for Washington's scheme, we follow our legislature's directive to construe Washington's Act liberally "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment." RCW 51.12.010. In contrast, Montana's legislature expressly forbids construing its workers' compensation statute "liberally in favor of any party." MCA 39-71-105(5). Thus, although *Harris* provides a different resolution of similar facts under a somewhat analogous statute, our legislature's express focus on minimizing the injured worker's suffering and economic loss is another reason that we reject adopting the *Harris* rationale here.

[16] CP at 54.

[17] CP at 135.

Moreover, the parties do not cite,[18] nor are we aware of, any Washington cases limiting such "certain injury" to major injuries.

On the contrary, RCW 51.24.020 expressly and clearly provides, "If injury results to a worker from the *deliberate intention* of his or her employer to produce such injury, the worker . .

---

[18] Much of the parties' arguments focus on Michelbrink's more serious injuries that allegedly resulted from the certain initial Taser contact injury. *See, e.g.*, Michelbrink's assertion that the initial "certain injury" when the probes contacted him caused a second, spine "contraction" injury. Br. of Resp't at 14. The statutory definition of "injury" appears to include Michelbrink's other "physical conditions" that *"result[ed]"* from the initial Taser contact injury. RCW 51.08.100 (emphasis added). But in this interlocutory appeal, we focus on a threshold issue—the known certainty of the *initial* Taser contact injury and whether Michelbrink raised an issue of material fact sufficient (1) to defeat summary judgment on the Act's employer immunity exclusion, and (2) to warrant a trial for damages at least for this certain initial injury and potentially also for his other more severe injuries that this initial injury may have triggered, regardless of whether these allegedly "resulting" injuries were also "certain."

WSP appears to limit its definition of Taser "injury" to *significant* injuries suffered by only a few individuals. *See* Br. of Appellant at 28-29. WSP also appears to argue that the Act bars recovery of damages for Michelbrink's secondary injuries unless WSP was certain, for example, that a back fracture like Michelbrink's would result from Taser exposure. But WSP misconstrues the test: An employee can fall within the Act's immunity exemption by showing that the employer willfully disregarded some amount of certain injury, not necessarily all the resultant injuries for which the employee seeks recovery. *Vallandigham*, 154 Wn.2d at 28. Thus, even if WSP could not specifically foresee with certainty that Michelbrink's fracture would result from his being shot by a Taser, he raises a genuine issue of material fact about whether WSP was certain that he would suffer an injury when it intentionally subjected troopers to an activity that it knew was designed to cause pain, trouble breathing, involuntary muscle contraction, incapacitation, electric shock, and at least a minor wound.

The Act's language does not expressly limit a plaintiff's recovery for intentional injury to the initial injury that was certain to occur. In order for the worker to recover, the plain language of the statute requires that "injury results to a worker from the deliberate intention of his or her employer to produce such injury." RCW 51.24.020. *Birklid* requires that "the employer had actual knowledge that *an* injury was certain to occur and willfully disregarded that knowledge"; it does not require the employee to prove the employer knew that *all* the resulting injuries suffered by the employee were certain to occur. *Birklid*, 127 Wn.2d at 865 (citing RCW 51.24.020). Thus, it appears that if Michelbrink proves at trial that WSP intentionally caused a certain injury, he meets the Act's requirements to maintain his action, including seeking recovery for additional unforeseeable or uncertain damages flowing from the injury, such as his fractured back.

12

. shall . . . *have cause of action* against the employer." RCW 51.24.020. And RCW 51.08.100 essentially defines two types of "injury": (1) "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without"; "*and*" (2) "*such physical conditions as result therefrom.*"[19] RCW 51.08.100 (emphasis added). The first part of this legislative definition covers the temporary pain, blistering, skin penetration, minor bleeding, and electric shock[20] commonly experienced by someone exposed to a Taser. Such injury is more than "temporary discomfort"[21]; rather, it is a tangible and immediate trauma.[22] We further note

---

[19] The summary judgment record does not contain medical testimony that Taser-induced muscle contractions caused Michelbrink's fracture. But WSP acknowledges that Taser-induced muscle contractions can cause fractures; and it does not dispute that Michelbrink's fracture was caused directly by the Taser exposure here. Again, we note that WSP training materials and the Taser manufacturer's warnings explain that the desired effect of the Taser is to cause involuntary muscle contractions with every exposure, which is how the target becomes incapacitated. The record also shows that the Taser incapacitates 99 percent of the troopers exposed to this training.

[20] *See, e.g., Keilhamer v. West Coast Telephone Co.,* 11 Wn.2d 24, 31, 118 P.2d 173 (1941) (plaintiff recovered for injuries suffered after being shocked while using telephone).

[21] Br. of Appellant at 36.

[22] WSP also argues that a "temporary pain or discomfort" is not sufficient to meet the *Birklid* test that the employer willfully disregarded actual knowledge of certain injury, and that the effects of Taser exposure did not meet the standard of a "'continued injury.'" Br. of Appellant at 35 (emphasis omitted) (quoting *Birklid,* 127 Wn.2d at 865). Ten years after deciding *Birklid,* the Washington Supreme Court in *Vallandigham* clarified that "[d]isregard of a *risk* of injury is not sufficient to meet the first *Birklid* prong; *certainty* of actual harm must be known and ignored. . . . [C]ontinued injury [must be] not only substantially certain but certain to occur." *Vallandigham,* 154 Wn.2d at 28, 32 (emphasis added and omitted). The Supreme Court used this "'continued injury'" language only in the context of a few cases addressing the "certainty" of injury to school district staff by behaviorally challenged students where, because of the lack of certainty of human behavior, continued injurious behavior by these students had to be shown to bring the school district employees' claims within the Act's immunity exception. *See, e.g., Vallandigham,* 154 Wn 2d at 29-35. As the Supreme Court explained, "given the inherently unpredictable nature of special education students . . . , at no point could the school district have been *certain* that injury to staff would continue." *Vallandigham,* 154 Wn.2d at 35.

13

that WSP trained its troopers how to remove Taser barbs from a human target. Even if such trauma is relatively minor, it falls within the definition of an "injury" for which a plaintiff may recover in tort.

We reiterate the legislature's directive that we construe "[t]his title," namely Title 51, the Industrial Insurance Act, "liberally" "for the purpose of reducing to a minimum the suffering and economic loss arising from injuries . . . occurring in the course of employment." RCW 51.12.010. Title 51 RCW expressly includes chapter 24, "Actions at Law for Injury or Death," which further includes RCW 51.24.020, "Action against employer for intentional injury," the employer immunity exception at issue here. Combining this liberal construction directive[23] with

---

Here, in contrast, the facts do not involve the unpredictability of human behavior. Instead, the facts involve repeated, predictable, known injury that the Taser will produce when fired at and connecting with a WSP trooper. The facts here are more in line with cases involving ongoing exposure of employees to known dangerous equipment, toxic substances, and circumstances not involving the vagaries of human behavior. *See, e.g., Travis v. Dreis & Krump Mfg. Co.*, 453 Mich. 149, 178, 551 N.W.2d 132 (1996) (exposure to polychlorinated biphenyls (PCBs), "a continuously operative dangerous condition" that the employer "knows will cause an injury"); *Fries v. Mavrick Metal Stamping, Inc.*, 285 Mich. App. 706, 717, 777 N.W.2d 205 (2009) ("continuously operative dangerous condition").

[23] Following the legislature's directive to construe the Act "liberally" does not conflict with our courts' "consistently [narrow]" interpretation of RCW 51.24.020's "limited exception when an employer intentionally injures an employee" on which our Supreme Court focused in *Vallandigham*, 154 Wn.2d at 27. The *Vallandigham* court explained the historic "narrow" interpretation of only a single key term in that statutory exception—"deliberate intention":

> [M]ere negligence, *even gross negligence*, does not rise to the level of deliberate intention. *Birklid*, 127 Wn.2d at 860-61. Even failure to observe safety laws or procedures does not constitute specific intent to injure, nor does an act that had only *substantial* certainty of producing injury. *Id.* at 860. Before 1995, Washington courts interpreted the 'deliberate intention' exception to apply only where an employer or its agent physically assaulted an employee. *Birklid*, 127 Wn.2d at 861-62.
>
> In 1995, in *Birklid*, this court interpreted the deliberate intention exception to reach beyond intentional physical assaults[, . . . . holding] that the phrase

the general principle that we look first to the plain language of the statute[24], we hold that the record before us shows that the Taser used on Michelbrink produced "from without" "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result," falling within RCW 51.08.100's first definition of "injury" for purposes of defeating summary judgment: WSP (1) shot two electrified dart-like barbed probes into Michelbrink's back, which (2) on contact, conducted electrical energy that caused his muscles to seize up and to convulse, incapacitating him.[25] RCW 51.08.100.

---

'deliberate intention' in RCW 51.24.020 means (1) 'the employer had actual knowledge that an injury was certain to occur' and (2) the employer 'willfully disregarded that knowledge.' *Id.* at 865. [T]he *Birklid* court rejected [that] a cause of action would be permitted if the employer knew that injury was 'substantially certain' to occur[, or if] 'the employer had an opportunity consciously to weigh the consequences of its act and knew that someone, not necessarily the plaintiff specifically, would be injured.' *Birklid*, 127 Wn.2d at 865. Instead, the *Birklid* court emphasized that it was 'mindful of the narrow interpretation Washington courts [had] historically given to RCW 51.24.020, and of the appropriate deference four generations of Washington judges have shown to the legislative intent embodied in RCW 51.04.010.' *Id.* Disregard of a *risk* of injury is not sufficient to meet the first *Birklid* prong; *certainty* of actual harm must be known and ignored.

*Vallandigham*, 154 Wn.2d at 27-28 (citations omitted).

[24] When interpreting statutes, "[w]e begin by examining the plain language of the statute." *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010).

[25] WSP's awareness of at least one other training incident in which an individual exposed to a Taser had suffered a fracture and its subsequent attempts to find out from the manufacturer about the frequency of serious fracture injuries does not, in our view, meet the statutory test that a fracture injury was certain to occur. But Michelbrink does not need to prove that his fracture was certain to occur in order to overcome summary judgment and to pierce WSP's immunity under the Act; he needs to show only that WSP knew that an injury, here, the initial Taser injury, was certain to occur. RCW 51.24.020.

15

A finder of fact could draw the reasonable inference[26] that the Taser probes "wound[ed]"[27] Michelbrink, which wound was an "injury" under the first broad definition in RCW 51.08.100, in addition to the electric shock,[28] involuntary muscle contractions, and temporary incapacitation previously noted.[29] We hold that for purposes of defeating summary judgment, the record shows WSP was aware that certain initial injury would result when a Taser barb contacted a human body.[30]

Having held that Michelbrink offered sufficient evidence of WSP's knowledge that use of the Taser would produce certain injury to troopers undergoing the training to meet the first prong

---

[26] *Hickle v. Whitney Farms, Inc.*, 148 Wn.2d 911, 919, 64 P.3d 1244 (2003) (citing *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001)).

[27] CP at 135.

[28] *See Lehtinen v. Weyerhaeuser Company*, 63 Wn.2d 456, 459, 387 P.2d 760 (1963), in which our Supreme Court expressly rejected, albeit in a different context, an earlier holding that "a series of static electrical shocks extending over an indefinite period of time did not constitute an industrial injury under RCW 51.08.100" (the definition of injury in Title 51 RCW). ("We do not accept . . . the view that one or more electrical shocks, . . . producing disability may not be a compensable industrial injury."). *Id.* at 459. Thus, Washington law recognizes that even a transitory occurrence, like an electric shock, which results in long term injury, like a fracture, may be compensable under our workers' compensation scheme.

[29] The record on summary judgment shows that Michelbrink's initial injury from the Taser barbs included pain and discomfort, trouble breathing, and incapacitation as a result of the Taser's electrical shock. Our Supreme Court has held that electrical shocks producing disability may be compensable workplace injury. *Lehtinen*, 63 Wn.2d at 459.

[30] We note that RCW 51.08.100's "second" definition of "injury"—"such physical conditions as result [from]" the first injury—appears to cover Michelbrink's other more serious injuries that the initial certain Taser injury allegedly triggered. But we leave the question of what other injuries Michelbrink may have suffered, as well as the extent of the initial Taser contact injury, for trial.

of the *Birklid* test, we next address the second prong of the *Birklid* test—WSP's disregard of this knowledge.

### B. WSP's Willful Disregard that Injury Would Occur: Question of Fact

WSP argues that because it did not know that that the Taser training would injure Michelbrink to the extent he suffered, its actions did not fall within the second prong of the *Birklid* test—willful disregard of certain injury.[31] Michelbrink responds that there is an issue of material fact about whether, given WSP's knowledge of certain injury, WSP nevertheless disregarded this knowledge and deliberately intended to injure him when its instructor shot him with a Taser during training. Taken in the light most favorable to Michelbrink, as we must on summary judgment, the record shows that (1) WSP required Taser training for troopers opting to use Tasers on the job; (2) WSP knew at a minimum that the Taser barbs would wound and deliver an electric shock on contact with a trooper's back; and (3) despite this knowledge of certain injury, WSP shot troopers with Tasers during training, which it required of all troopers using Tasers in the course of performing their duties. We hold, therefore, that Michelbrink has established a material issue of fact about whether WSP deliberately intended to injure him, despite its knowledge that the Taser barbs were certain to cause injury, to defeat summary judgment.

---

[31] Interpreting the Act to bar tort actions unless the employer "deliberately intended to injure" the employee, our Supreme Court has noted that not even "an act that has a substantial certainty of producing injury" is sufficient to overcome this high bar. *Birklid*, 127 Wn.2d at 860.

No. 44035-1-II

We affirm the superior court's denial of WSP's motion for summary judgment dismissal of Michelbrink's tort action for intentional injury, and we remand for trial.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.P.T.