# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| MICHAEL S. MICHELBRINK, JR., a single man, | No.  44035-1-II |
| Respondent, | |
| v. | |
| STATE OF WASHINGTON, WASHINGTON STATE PATROL, | PUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. — The Washington State Patrol (WSP) filed an interlocutory appeal challenging the superior court's denial of summary judgment against former WSP trooper Michael Michelbrink's lawsuit for damages resulting from being shot with a Taser[1] at the workplace as part of WSP's Taser training.  Michelbrink argued that being shot with a Taser fell within the deliberate intention exception[2] to the Washington State Industrial Insurance Act's[3] (IIA) general prohibition of civil suits for workplace injuries.[4]

In a previous opinion, we affirmed the superior court.  *Michelbrink v. Washington State Patrol*, 180 Wn. App. 656, 665-68, 323 P.3d 620 (*Michelbrink* I), *remanded*, 339 P.3d 635

---

[1] Tasers are electronic weapons that temporarily incapacitate targets with "propelled wires or direct contact to conduct energy which affects the sensory and motor functions of the nervous system."  Clerk's Papers (CP) at 48.

[2] RCW 51.24.020.

[3] Title 51 RCW.

[4] RCW 51.04.010.

(2014). We liberally interpreted the deliberate intention exception and held that issues of material fact existed as to whether WSP had actual knowledge that an injury was certain to occur from being shot with a Taser and as to whether WSP willfully disregarded that knowledge. *Michelbrink* I, 180 Wn. App. at 672-73. WSP filed a petition for review in the Supreme Court. Our Supreme Court granted review and remanded *Michelbrink* I for this court to reconsider our decision in light of *Walston v. Boeing Co.*, 181 Wn.2d 391, 334 P.3d 519 (2014).

Because *Walston* makes clear that the deliberate intention exception is to be narrowly interpreted, we reverse our prior holding that the deliberate intention exception should be liberally interpreted. But because there is still an issue of material fact as to whether WSP had actual knowledge that an injury was certain to occur from Taser exposure and as to whether WSP willfully disregarded that knowledge, we again affirm the superior court's denial of summary judgment.

## FACTS

A.    *Background*

Michelbrink was employed as a trooper with WSP. WSP required troopers who elected to carry a Taser to take a Taser training course. In this training course, an instructor shot the troopers with a Taser and administered a shock for one to five seconds. Taser training included shooting the target's back with two electrified metal probes that attached to the skin and used electricity to temporarily incapacitate the target by causing involuntary muscle contractions. WSP's Taser training manual stated that being shot by a Taser could cause "cuts, bruises and abrasions caused by falling, strain related injuries from strong muscle contractions such as muscle or tendon tears, or stress fractures." Clerk's Papers (CP) at 136. WSP's lead firearms

instructor, who created WSP's Taser training program and trained the trainees, stated that "the most typical effects of [a Taser] exposure included temporary pain, minor skin irritation, temporary blisters, and redness or minor bleeding if the Taser probes punctured the skin." CP at 54. Taser International, Inc., the company that manufactures Tasers, also provided warnings, including a statement that "[i]n most areas of the body, wounds caused by TASER probes will be minor. TASER probes have small barbs." CP at 135.

Michelbrink participated in the WSP Taser training, during which he was shot by a Taser. As WSP expected, the Taser immediately caused Michelbrink pain, temporary breathing trouble, and incapacitation. Over the next several months, Michelbrink underwent treatment for what were initially thought to be pulled muscles. When there was little improvement, an MRI (magnetic resonance imaging) was performed which revealed that the electric shock from the Taser had caused a compression fracture in Michelbrink's back. Michelbrink was ultimately diagnosed with a fracture in his vertebrae and a "bulged disc." CP at 32.

B.      *Procedural History*

Michelbrink filed a lawsuit against WSP for injuries caused by the Taser, alleging that being shot by the Taser fell within the deliberate intention exception to the IIA's general prohibition on civil suits for workplace injuries. RCW 51.04.010. WSP moved for summary judgment, arguing that because Michelbrink's claim did not fall within the deliberate intention exception, the IIA's general prohibition on civil suits for workplace injuries precluded his claim.

The superior court denied WSP's summary judgment motion. WSP moved this court for discretionary interlocutory review, which we granted. *Michelbrink* I, 180 Wn. App. at 661. We then affirmed the superior court's denial of summary judgment and held that the deliberate

intention exception is to be liberally interpreted, and that Michelbrink had raised issues of material fact as to whether WSP had actual knowledge that an injury was certain to occur from being shot by a Taser and as to whether WSP willfully disregarded that knowledge. 180 Wn. App. at 665-73.

WSP petitioned our Supreme Court for review. After WSP filed its petition, our Supreme Court decided *Walston*, granted WSP's petition for review, and remanded *Michelbrink* to us for reconsideration in light of *Walston*. The parties filed supplemental briefing.[5]

ANALYSIS

I. STANDARD OF REVIEW

We review summary judgment de novo. *Camicia v. Wright Constr. Co.*, 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a summary judgment order, we review the evidence in the light most favorable to the nonmoving party and make all reasonable inferences in that party's favor. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

We also review questions of statutory interpretation de novo. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 919, 215 P.3d 185 (2009). Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, we give effect to that plain meaning as an expression of legislative intent. 146 Wn.2d at 9-10. We

---

[5] Additionally, the Washington State Association of Sheriffs and Police Chiefs filed an amicus brief supporting WSP's position.

determine the plain meaning of a statutory provision from the ordinary meaning of its language, as well as the general context of the statute, related provisions, and the statutory scheme as a whole. *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007).

## II. BACKGROUND OF THE IIA

"The IIA created the workers' compensation system, . . . a 'grand compromise' that gave employers 'immunity from civil suit by workers' in return for giving injured workers 'a swift, no-fault compensation system for injuries on the job.'" *Walston*, 181 Wn.2d at 396 (quoting *Birklid v. Boeing Co.*, 127 Wn.2d 853, 859, 904 P.2d 278 (1995)). Because the legislature intended the new workers' compensation system to fully compensate employees, the IIA instructs that its provisions "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. But because the legislature intended to immunize employers from civil suits for workplace injuries, the IIA established a general prohibition on all civil suits for damages arising out of workplace injuries, with only a few narrow exceptions. RCW 51.04.010.

One such exception is RCW 51.24.020's deliberate intention exception, which states:

If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

Thus, employers who deliberately injure their employees are divested of immunity from lawsuits by RCW 51.24.020. *Birklid*, 127 Wn.2d at 859. The policies supporting RCW 51.24.020 include allowing employees to fully recover for injuries and disallowing employers who

5

intentionally injure their employees from burdening the industrial insurance risk pool. 127 Wn.2d at 859; RCW 51.16.035. The IIA defines "injury" as "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100.

Originally, the deliberate intention exception was applied primarily in situations where employees were physically assaulted in the workplace. *Walston*, 181 Wn.2d at 396. But in 1995, our Supreme Court decided *Birklid*, which established a new test to determine whether a claim fell within the deliberate intention exception. 127 Wn.2d at 865. In *Birklid*, our Supreme Court reiterated that the deliberate intention exception should be interpreted narrowly. 127 Wn.2d at 860. The court held that in order for an employer's actions to fall under the deliberate intention exception, the employee must prove (1) "the employer had actual knowledge that an injury was certain to occur" and (2) the employer "willfully disregarded that knowledge." 127 Wn.2d at 865.

### III. *WALSTON*

In *Walston*, an employee was required to frequently work with asbestos at the workplace, which caused the employee to develop the lung disease mesothelioma. 181 Wn.2d at 394. The employee filed a civil suit against his employer, arguing that exposure to asbestos fell within the deliberate intention exception because the employer had actual knowledge that an injury was certain to occur from asbestos exposure and willfully disregarded that knowledge by continuing to expose the employee to asbestos. *See* 181 Wn.2d at 395-96. Walston argued that an injury was certain to occur from asbestos exposure in two ways: (1) by causing microscopic lung

damage at the cellular level and (2) by causing lung diseases like mesothelioma. *See* 181 Wn.2d at 398.

On appeal, our Supreme Court held that summary judgment in the employer's favor was proper because the employee's claim did not fall within the deliberate intention exception as a matter of law. *See* 181 Wn.2d at 398. First, the court reaffirmed *Birklid's* test:

> In *Birklid* . . . [w]e held that "deliberate intention" includes when "the employer had *actual knowledge* that an injury was *certain to occur* and willfully disregarded that knowledge."

> Before adopting that narrow test, we reviewed broader tests from other jurisdictions and rejected them. In particular, we considered a test that defined deliberate intention to include situations in which the injury is "'substantially certain to occur.'" We rejected that test and instead adopted a narrower test for Washington. Thus, "deliberate intention" is a high standard that is met in Washington only when an employer had actual knowledge that an injury was certain to occur. An act that has substantial certainty of producing injury is insufficient to meet that standard. Similarly, negligence—even gross negligence— is not sufficient to meet the "deliberate intention" standard.

181 Wn.2d at 396-97 (citations omitted) (quoting *Birklid*, 127 Wn.2d at 860, 864-65).

The court then held that lung disease is an injury but that asbestos exposure caused only a risk of lung disease, not a certainty of lung disease. 181 Wn.2d at 397. The court held that microscopic lung damage at the cellular level is not an "injury" at all because microscopic lung damage is asymptomatic unless and until it causes a lung disease. 181 Wn.2d at 398. Thus, the court ruled that while asbestos exposure created a *risk* of injury, an injury was not *certain* to occur from asbestos exposure. 181 Wn.2d at 398.

## IV. APPLICATION TO MICHELBRINK'S CASE

WSP argues that we should reverse *Michelbrink* and hold that (1) the deliberate intention exception must be narrowly interpreted, (2) Michelbrink failed to raise an issue of material fact

as to whether WSP had actual knowledge that an injury was certain to occur from being shot by a Taser,[6] and (3) Michelbrink failed to raise an issue of material fact as to whether WSP willfully disregarded that knowledge. We agree that we should interpret the deliberate intention exception narrowly. But we hold that Michelbrink still successfully raised an issue of material fact as to whether WSP had actual knowledge that an injury was certain to occur from shooting Michelbrink with a Taser and as to whether WSP willfully disregarded that knowledge.

A.      *Narrow Interpretation of the Deliberate Intention Exception*

WSP argues that we should narrowly interpret the deliberate intention exception. We agree.

Our Supreme Court has held that the deliberate intention exception must be interpreted narrowly. *See, e.g.*, *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 27, 109 P.3d 805 (2005); *Birklid*, 127 Wn.2d at 859-60.

In *Michelbrink* I, we held that because the IIA is to be liberally interpreted, parts of the deliberate intention exception within the IIA should also be liberally interpreted. 180 Wn. App. at 663, 670-71. We acknowledged our Supreme Court's holdings that the deliberate intention exception is to be interpreted narrowly, but held that this applied only to whether the employer acted with deliberate intent, not to the exception's other elements (such as what constitutes an "injury" or whether an injury was certain to occur):

> Following the legislature's directive to construe the Act "liberally" does not conflict with our courts' "consistently [narrow]" interpretation of RCW 51.24.020's "limited exception when an employer intentionally injures an employee" . . . . The

---

[6] WSP refers to Michelbrink's being shot by a Taser as "Taser exposure," and then draws an analogy to cases describing "exposure" to toxic substances and other risks of injury. Suppl. Br. of Appellant at 6, 7. Because we see a substantive difference, we do not adopt this term.

8

> *Vallandigham* court explained the historic "narrow" interpretation of only a single key term in that statutory exception—"deliberate intention".

180 Wn. App. at 670 n.23 (alteration in original).

But in *Walston*, our Supreme Court went beyond narrowly interpreting whether the employer acted with deliberate intent: it also narrowly interpreted what constitutes an "injury" (by rejecting the argument that microscopic and asymptomatic lung damage can constitute an "injury") and whether an injury is certain to occur (by rejecting that the injury of lung disease is certain to occur from continual asbestos exposure). 181 Wn.2d at 397-98. Thus, our Supreme Court clearly established that every element of the deliberate intention exception should be interpreted narrowly. Therefore, we reverse *Michelbrink* I on this point and hold that consistent with *Walston*, every element of the deliberate intention exception must be interpreted narrowly.

B.   *Issue of Material Fact as to WSP's Actual Knowledge that Injury was Certain To Occur*

WSP argues that Michelbrink failed to raise an issue of material fact as to whether WSP had actual knowledge an injury was certain to occur from Taser exposure. We disagree.

1. *Issue of Material Fact as to Whether WSP Knew any Injury was Certain To Occur*

As an initial matter, we note that Michelbrink's argument largely rests on the allegedly known and expected injury that arises from being stabbed and shocked by the Taser, as well as his more serious injuries of a broken vertebrae and bulged disk. WSP focuses on only Michelbrink's more serious injuries. WSP argues that "not every physical reaction to a work activity constitutes a compensable 'injury' under the IIA" and that specifically the temporary pain, skin irritation, redness, and other similar reactions to being shot with a Taser do not qualify as industrial injuries under the IIA. Br. of Appellant at 8. But neither our Supreme Court, nor our legislature has carved out an exception for a de minimus injury. We decline to do so here.

For this reason and the reasons cited below, we consider the allegedly known and expected injuries of being stabbed and shocked by barbed probes an "injury" for purposes of reviewing this summary judgment decision.

In *Walston*, our Supreme Court held that microscopic lung damage alone does not constitute an injury under the IIA because unless and until microscopic lung damage causes disease, it is *asymptomatic*. 181 Wn.2d at 398. Thus, a harm must be *symptomatic* in order to constitute an "injury." *See* 181 Wn.2d at 398. Neither RCW 51.08.100's definition of injury, *Walston*, nor any other authority citied by the parties supports that *symptomatic* injuries must reach a particular level of severity before constituting an "injury" under the IIA.

Here, it is undisputed that WSP required trainees like Michelbrink, who chose to carry Tasers, to be shot by the Taser. The record supports that Taser training included shooting the trainee's back with a Taser's two electrified metal probes, which attach to the skin with barbs and use electricity to temporarily incapacitate the trainee by causing involuntary muscle contractions. TASER International, Inc.'s warnings state that the Taser's electrical probes cause "wounds" which are typically "minor." CP at 135. WSP's lead firearms instructor, who created the Taser training program and trained the trainees, stated that "the most typical effects of [a Taser] exposure included temporary pain, minor skin irritation, temporary blisters, and redness or minor bleeding if the Taser probes punctured the skin." CP at 54. As explained in *Michelbrink* I, the record does not clarify the level of certainty that "most typical" was meant to convey. 180 Wn. App. at 666. Thus, interpreting the above evidence in the light most favorable to Michelbrink, an issue of material fact exists as to whether "temporary pain, minor skin

irritation, temporary blisters, and redness or minor bleeding if the Taser probes punctured the skin" was certain to occur from Taser exposure. CP at 54.

While these are relatively minor effects, they are not *asymptomatic* effects. Furthermore, each of these injuries constitutes "a sudden and tangible happening, of a traumatic nature, producing an immediate or prompt result, and occurring from without, and such physical conditions as result therefrom." RCW 51.08.100.

Injuries are an expected consequence of shooting Michelbrink with a Taser under *Walston* as well as the IIA. Therefore, an issue of material fact exists as to whether WSP had actual knowledge that an injury was certain to occur.[7]

2. *WSP Need Not Have Actual Knowledge About the Specific Injuries Suffered By Michelbrink*

WSP argues that RCW 51.24.020's requirement that the employee's injury must result from the employer's deliberate intention to produce "such injury" means that it can be held liable only if it had actual knowledge that Michelbrink's *specific injuries* were certain to occur from Taser exposure. Br. of Appellant at 35-36. We disagree. Because our case law does not restrict a plaintiff's recovery in this manner and because this argument defeats the purpose of the intentional injury exemption, we hold that where an employer's willful disregard of actual knowledge that any injury was certain to occur caused the employee's specific injuries, the

---

[7] WSP argues that its actual knowledge that an injury was certain to occur cannot be established because only one percent of trainees exposed to the Taser reported an injury. While this fact may benefit WSP at trial, a lack of injury *reports* does not preclude that WSP derived (from other sources) actual knowledge that an injury was certain to occur from Taser exposure. As discussed above, evidence in the record independent of any injury reports raise an issue of material fact as to whether WSP knew that an injury was certain to occur from Taser exposure.

deliberate intention exception applies regardless of whether the employer had actual knowledge that the employee's specific injuries themselves were certain to occur.

To support its argument that an injured plaintiff's recovery is limited to only injuries a tortfeasor intended to cause, WSP cites *Folsom v. Burger King*, 135 Wn.2d 658, 958 P.2d 301 (1998), but WSP misinterprets the Court's holding in that case. In *Folsom*, a restaurant employer hired a convicted violent felon, who murdered two fellow restaurant employees while robbing the restaurant. 135 Wn.2d at 661. The murdered employees' estates sued the employer, arguing that their claims fell under the deliberate intention exception because the employer had hired the murderer with knowledge of his violent criminal record, negligently left too much money in the restaurant's money register, and discontinued security monitoring of the restaurant. 135 Wn.2d at 665-66. Our Supreme Court held that the deliberate intention exception did not apply as a matter of law because the record did not support that an injury was certain to occur from the employer's negligent acts. *See* 135 Wn.2d at 667. WSP argues that *Folsom* held that murdered employees had to show that a *murder* was certain to occur before their claims could fall under the deliberate intent exception. We interpret *Folsom* to hold that the murdered employees had to show evidence that an *injury* was certain to occur, not that a *murder* was certain to occur. *See* 135 Wn.2d at 667.

Moreover, it is well settled law that a tortfeasor takes his victim as he finds him. *Buchalski v. Universal Marine Corp.*, 393 F. Supp. 246 (W.D. Wash. 1975). Defendants are liable for "any physical injury they cause, no matter how unforeseeable, once they inflict harm on a plaintiff's body." *Gibson v. County of Washoe*, 290 F.3d 1175, 1192 (9th Cir. 2002). RCW 51.24.020's term "such injury" was intended to require only that the employer's willful disregard

12

of actual knowledge that an injury was certain to occur caused the employee's specific injuries, not that the employer had actual knowledge the employee's specific injuries were themselves certain to occur. Limiting employees' remedies for deliberate injury by employers to only the specific type of injury intended would not serve the intended purpose of the deliberate intention exception.

Finally, the policy behind RCW 51.24.020 assures that employers who deliberately injure their employees should not enjoy immunity from suits. Employees' remedies should not be limited by the IIA when their employers intentionally assault them. *Birklid*, 127 Wn.2d at 859. And employers who engage in such conduct should not burden the industrial insurance risk pool. *Birklid*, 127 Wn2d at 859. Neither law nor policy supports the WSP's argument.

Taken to its extreme, WSP's argument would undermine RCW 51.24.020. If an employer physically assaulted an employee by slapping the employee across the face, it disregarded actual knowledge that injury was certain to occur because slaps are certain to cause redness of the cheek and minor pain. If the slap instead broke the employee's neck, WSP's argument would lead to the conclusion that the employer would bear no responsibility for that broken neck.

Here, WSP physically assaulted Michelbrink by shooting him with a Taser. Issues of material fact exist as to whether WSP disregarded actual knowledge an injury was certain to occur and whether Tasers are certain to cause muscle seizures, minor wounds, pain, skin irritation, blisters, redness, or bleeding. If WSP disregarded actual knowledge that these injuries were certain to occur and if the Taser exposure instead caused Michelbrink a vertebrae fracture

13

and bulged disc, WSP may be responsible to compensate Michelbrink for the vertebrae fracture and bulged disk.

We hold that because an issue of material fact exists as to whether WSP's willful disregard of actual knowledge that an injury was certain to occur caused Michelbrink's specific injuries, an issue of material fact exists as to whether the deliberate intention exception applies, regardless of whether WSP had actual knowledge that Michelbrink's *specific injuries* were certain to occur.

C.     *No Intent To Injure*

WSP further argues that because it had no subjective intent to injure, RCW 51.24.020 does not apply. We disagree.

WSP cites the New Jersey case of *Bustamante v. Tuliano*, 248 N.J. Super. Ct. App. Div. 492, 591 A.2d 694 (1991), and the Montana case of *Harris v. Dep't of Corrections*, 368 Mont. 276, 294 P.3d 382 (2013), to support its argument that because WSP did not intend to injure Michelbrink, it cannot be liable for Michelbrink's injuries. Both *Bustamante* and *Harris* are distinguishable from this case.

In *Bustamante*, a police officer who lost vision in one eye after being shot with a wax bullet during a training exercise where officers simulated clearing a building of two "bad guys" sued the officer who had shot him.[8] 591 A.2d at 696. The appellate division of the New Jersey superior court held that Bustamante failed to establish that his co-officer had committed an intentional wrong. 591 A.2d at 699. The court focused on the context of Bustamante's injury in

---

[8] In citing *Bustamante*, WSP alleges Bustamante claimed that his employer deliberately injured him. While the original complaint named several officers whom Bustamante claimed were directing the training exercises, those parties were dismissed during trial. 591 A.2d at 695 fn 1.

concluding that Tuliano's intent in firing the wax bullet at Bustamante was not to injure, but rather so that Bustamante would know he had been hit and was eliminated from the training exercise. 591 A.2d at 699.

> The 'sting' of the wax bullet was analogous to the use of a paint bullet. Its purpose was not to injure but to serve as evidence that the 'victim' could no longer participate. Elimination of the victim was the point of the exercise. The suggestion that Tuliano intended or expected some injury to Bustamante is simply not supported by this record.

591 A.2d at 699. *Bustamante* is distinguishable from this case because there, the firing officer had no intent to injure Bustamante by shooting him with the wax bullet. Here, WSP's intent in firing the Taser at Michelbrink was to make him experience the injury of being shot with a Taser.

In *Harris*, a Montana Department of Corrections employee brought an intentional tort action against the state under Montana's Industrial Insurance Act,[9] after he was intentionally shot with a Taser during mandatory training. *Harris*, 294 P.3d at 385. Like Washington's IIA, the Montana act has an "intentional injury" provision with "deliberate intent" and "knowledge of actual harm" requirements, which allows a tort action against an employer. *Compare* MCA § 39-71-413, with RCW 51.24.020. However, the Montana Supreme Court differed from Washington's *Birklid* test when it held that Harris had "failed to provide any evidence from which [it] can infer that the [Department of Correction's] intent was to harm *rather than educate and train.*" *Harris*, 294 P.3d at 387-88. As we mention in *Michelbrink* I, because the Montana Supreme Court inserted a judicially crafted requirement into the statutory scheme, we do not find *Harris* persuasive. *Michelbrink* I, 180 Wn. App. at 667 n.15. In addition, our courts have not required the employer to have the exclusive purpose of injuring the employees. *See, e.g.*,

---

[9] MONT. CODE ANN. (MCA) § 39-71-413.

*Birklid*, 127 Wn.2d at 863. Any decision to insert such a requirement is best left to the legislature. Thus, although *Harris* provides a different resolution of similar facts under a somewhat analogous statute, our legislature's express focus on minimizing the injured worker's suffering and economic loss, in addition to *Birklid*'s test to determine whether a claim falls within RCW 51.24.020's deliberate intention exception compel us to reject the *Harris* rationale here.

The *Birklid* court held that the phrase "deliberate intention" in RCW 51.24.020 means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. 127 Wn.2d at 865. There, the court noted that in all the other Washington cases, while the employer may have been aware that it was exposing workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. 127 Wn.2d at 863. The court distinguished Birklid's injury from the prior cases by pointing out that there was no accident that caused his injury. 127 Wn.2d at 863. Rather, the actions of Boeing went beyond gross negligence and involved the willful disregard of actual knowledge of continuing injuries to employees. 127 Wn.2d at 863. Similarly, in our case, WSP was not just negligently exposing its troopers to unsafe working conditions or conducting a risky training exercise. Rather, by intentionally shooting Michelbrink with a Taser, WSP deliberately acted in a way that was arguably certain to cause injury. Because there is a question of material fact as to whether WSP had actual knowledge that being shot with the Taser was certain to cause injury, there is a question of material fact as to whether WSP acted with deliberate intention in injuring Michelbrink.

16

D.      *Necessary for Training Purposes*

WSP and Amicus argue that holding WSP responsible for Michelbrink's injuries would undermine trooper training.

> WSP troopers, as front-line, first responders, regularly confront dangerous, frequently life threatening events. They must 'actively train in real-world environments to prepare for these dangers, and to ensure that they can safely perform their duties.' This training prepares troopers for the demanding physical tasks and difficult judgment decisions their job requires, such as whether and how much force to use.

Suppl. Br. of Appellant at 6. We fully appreciate the compelling policy arguments for this exclusion made by WSP and Amicus. But nothing in the IIA supports an exclusion for law enforcement agency training. *See Birklid*, 127 Wn.2d at 862

Moreover, *Birklid* specifically rejected this risk-benefit analysis. 127 Wn.2d at 862.

Boeing proposed that our Supreme Court adopt the following language:

> Evidence that an employer has deliberately engaged in conduct that results in occupational injuries or disease within its workforce is *not* evidence of a specific intent to injure members of that workforce for purposes of RCW 51.24.020 so long as that conduct was *reasonably calculated to advance an essential business purpose.*
>
> Conversely, when an employer deliberately engages in conduct that is not reasonably calculated to advance an essential business purpose, such conduct *may* constitute evidence of specific intent to injure for purposes of RCW 51.24.020 if the surrounding facts and circumstances indicate that the employer's specific purpose was to bring about an employee's injury.

*Birklid*, 127 Wn.2d at 862. The court declined to adopt Boeing's formulation for RCW 51.24.020. 127 Wn.2d at 862.

17

The legislature has specifically excluded law enforcement from statutory requirements and prohibitions before.[10] Had the legislature intended a similar exclusion here, it could have said so directly. Whether to add an exclusion for law enforcement training to the deliberate intention exception is a decision for the legislature, not for our court.

E.      *Willful Disregard of Actual Knowledge*

WSP argues that Michelbrink cannot show that it willfully disregarded actual knowledge that an injury was certain to occur from being shot by a Taser because WSP took affirmative steps to protect the trainees from secondary injuries, such as having spotters to protect employees shot by the Taser from falling and checking to see if the employees were medically fit prior to Taser training. We disagree.

If WSP had actual knowledge that an injury was certain to occur from being shot by a Taser and compelled its employees to be shot anyway, WSP willfully disregarded actual knowledge that the Taser would cause certain injury. It is undisputed that WSP required employees who used a Taser to be shot with a Taser, and an issue of material fact exists as to whether WSP had actual knowledge that muscle seizures, minor wounds, pain, skin irritation, blisters, redness, or bleeding were certain to occur from Taser exposure. WSP's actions to prevent injury did not address these injuries. Rather, WSP's actions addressed secondary injuries such as falling or medical complications. Thus, an issue of material fact exists as to whether WSP willfully disregarded knowledge that an injury was certain to occur from Taser exposure.

---

[10] For example, RCW 49.44.120 prohibits potential employers from requiring employees or prospective employees to be subject to any lie detector tests as a condition of employment. The statute specifically excludes law enforcement agencies from this prohibition.

18

No. 44035-1-II

## V. ATTORNEY FEES

Michelbrink requests attorney fees on appeal. Because Michelbrink does not support his attorney fee request with argument or citation to authority, we do not consider it. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 493, 200 P.3d 683 (2009).

## VI. CONCLUSION

In conclusion, we reverse our prior holding that the deliberate intention exception should be liberally interpreted, and we now narrowly apply the exception to this case. But because there is still an issue of material fact as to whether WSP had actual knowledge that an injury was certain to occur from Taser exposure and as to whether WSP willfully disregarded that knowledge, we again affirm the superior court's denial of summary judgment.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.